JACOB BILLINGTON, Appellant, v. JAMES WAGONER and others, Respondents.

DEFENSE OF USURY. The defense of usury can be set up only by the party bound by the original agreement to pay the sum borrowed, or by the sureties, heirs, devisees or personal representatives of such party.

*F. Kernan*, for the appellant.

*Hammond & Ferris*, for the respondent.

DAVIES, J.   This action is brought to recover the amount of a promissory note, made by the defendants, payable to the plaintiff or bearer, the defendant James Wagoner being the principal in the note, and the other defendants his sureties. It appeared upon the trial, that after the note became due, about December 1, 1857, it was agreed between the plaintiff and James Wagoner, the principal, in consideration that he, Wagoner, would deliver to the plaintiff a certain fat hog of the value of $11.25, and would release the plaintiff from the payment of two bushels of potatoes, theretofore sold and delivered by the defendant to him, the value of which is not stated, that the plaintiff would wait for and postpone the payment of said note until the fall of the year 1858. This action was commenced in April, 1858. The counsel for the plaintiff asked the court to charge the jury, that if they should find that the agreement set forth in the answer had been proved, and that such an agreement had in fact been made between the parties, yet such an agreement would be usurious and void, and did not constitute a valid defense to the action, but that the plaintiff would, notwithstanding, be entitled to a verdict for the amount due on the note set forth in the complaint.   The judge declined so to charge the jury, and the counsel for the plaintiff then and there excepted.

The judge charged the jury, that if they believed that the agreement set up in the answer had been proven, it would be

a valid defense, and the defendants would be entitled to a verdict, to which the counsel for the plaintiff then and there excepted. The jury found a verdict for the defendants, and the court directed the exceptions to be heard in the first instance at the General Term, which, on such hearing, rendered a judgment for the defendants, and the plaintiff now appeals to this court.

It is incontrovertibly settled by abundant authority, that the giving of time to the principal, without the consent of the surety, discharges and releases the latter. (*Gahn* v. *Niemcewicz*, 11 Wend., 312; *Chester* v. *Kingston Bank*, 16 N. Y., 336; *Smith* v. *Townsend*, 25 N. Y., 479.)

The doctrine on this subject is clearly laid down in *Rees* v. *Berrington* (2 Vesey, Jun., 540), by the lord chancellor, and that case has frequently received the approval of the courts of this State. He said: "There shall be no transaction with the principal debtor, without acquainting the person who has a part interest in it. The surety only engages to make good the deficiency. It is the clearest and most evident equity not to carry on any transaction without the privity of him, who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound and transact his affairs (for they are as much his as your own) without consulting him. You must let him judge whether he will give that indulgence contrary to the nature of his engagement." In *Ludlow* v. *Simond* (2 Caines' Cases in Error, 57), KENT, Ch. J., said: "It is a well settled rule, both at law and in equity, that a surety is not to be held beyond the precise terms of his contract, and the creditor has no right to increase his risk without his consent, and cannot therefore vary the original contract, for that might vary the risk."

In *Hubly* v. *Brown* (16 Johns., 70), the Supreme Court held the indorser of the note discharged, when the holder, in consideration of a premium paid to him by the maker, after the note became due, agreed to wait ninety days longer, without suing upon the note. The indorsers were regarded as sureties for the maker, and therefore entitled to all the rights of sureties. This case is quoted approvingly in *Rey-*

*nolds* v. *Ward* (5 Wend., 501), where it was held that an agreement without consideration by a creditor with the principal debtor enlarging the time of payment, does not discharge the surety to such note. But the doctrine of *Hubly* v. *Brown* is fully conceded, and the whole ground of the decision is, that the agreement was without consideration, and therefore the holder of the note was not estopped by it from proceeding forthwith, or at any time, to prosecute upon it. The reason given for the rule that the delay discharges the surety, is that by virtue of the agreement, assuming it to be valid and binding, the holder is precluded, during the extended time, from proceeding against the maker, or principal debtor. It is the right of the surety to discharge himself at any time by payment to the holder or creditor, and be subrogated to his right to enforce immediate payment against the primary or original debtor. This right would be utterly defeated if the creditor could give time to the principal debtor without the consent of the surety.

I do not understand this doctrine is controverted on the part of the plaintiff, but conceded, by the position taken, that the agreement made by him with the principal debtor was void, and therefore the case is brought within the principle of that laid down in *Reynolds* v. *Ward* (*supra*). The agreement is claimed by him to be void on the ground that it was usurious, and that can only be affirmed on the assumption that it violated the statute against usury.

But assuming that the agreement, made by the plaintiff with the principal debtor, was usurious, and therefore, in the language of the statute, void, can the plaintiff interpose that objection? The defendants claim it to be a valid and binding agreement. They are estopped from ever hereafter setting up that it was void, and, assuming it to be valid, the consequences resulting therefrom are the discharge of the sureties and the postponement of the plaintiff's right of action against the principal debtor, until the expiration of the postponed time of payment. Although the statute uses the language that any usurious note, contract, &c., shall be void, yet it is not always so regarded, as it is in the power of the

party who can avail himself of that defense to waive it. He may waive the usury and provide for the payment of the money actually lent, with the legal interest thereon, and such liability furnishes a good consideration for a direction to assignees to pay that money out of an assigned estate, and those who come in as *cestui que trust*, cannot object to the legality of the assignment and the validity of the trust therein contained. (*Adams* v. *Pratt*, 7 Paige, 639.)

But this defense or objection to the contract, that it is void on account of usury, can only be alleged or set up by the party bound by the original contract to pay the sum borrowed, or his sureties, heirs, devisees, or personal representatives. (*Post* v. *Bank of Utica*, 7 Hill, 391; *Mechanics' Bank* v. *Edwards*, 1 Barb. S. C., 271.) And I entirely concur, in the views expressed by BARLOW, Senator, in *Post* v. *Bank of Utica* (*supra*), when he says: "I concede that remedial statutes are to be construed liberally, but I cannot concede that a statute is remedial which creates not only a forfeiture of the money lent, but renders the party violating its provisions guilty of a misdemeanor, and punishable by fine and imprisonment. On the contrary it appears to me, that such a statute is penal in its character, and subject to a strict construction." It is certainly a novel position that the usurer can come into court and claim that he has violated the statute, and that he should be subjected to its pains and penalties. Principle and authority alike condemn such a procedure. The precise point under consideration arose in *La Farge* v. *Herter* (4 Barb. S. C., 346), when the court, by GRIDLEY, J., says: "It does not lie in the mouth of La Farge to set up his own illegal conduct, and to allege that his own bond and mortgage are void for usury, and elect to treat them void for that reason. It is the victim of the usury, and not the usurer himself, that can set up against a contract that it is usurious and void."

This case came before this court in 5 Seld., 241, and the judgment of the Supreme Court was affirmed. On this point the court, by RUGGLES, Ch. J., said: "The taking of usury is a misdemeanor by statute, and the agreement to

take it is, in the eye and in the language of the law, corrupt. The parties, however, do not stand *in pari delicto*. It is oppression on the one side and submission on the other. The borrower, therefore, may set up usury for the purpose of avoiding a contract tainted with it, but the lender cannot." And this precise question arose and was decided in a case in South Carolina, and which is approved of in *La Farge* v. *Herter*. It is the case of *Miller* v. *Kerr* (Bayley, 4). It was an action of debt on bond. The defense was that the defendant had conveyed certain lands to the plaintiff, in satisfaction of the bond debt. The plaintiff's answer to the defense was, that the lands were conveyed in pursuance of a corrupt and usurious agreement, by which the lands were to be reconveyed to the defendant on payment by him of the bond debt with fourteen instead of seven per cent interest thereon, within two years. That the conveyance of the lands being made on an usurious contract, were void, and the bond therefore unsatisfied. JOHNSON, J., in delivering the opinion of the court, said: "It is a clear and well established rule of law, that no one can take advantage of his own wrong. He who violates a law comes with a bad grace to ask to be restored to rights which he has surrendered by his illegal act; and for this reason he who pays money on an illegal consideration, cannot maintain an action to recover it back. And what is the case here? The defendant was indebted to the plaintiff by bond. The plaintiff accepted lands in payment, and he now asks to be released from his last contract, and to be restored to his rights on the bond, upon the ground that knowingly and willfully, and in violation of the statute against usury, he has annulled the debt due on the bond. According to the rule, he cannot be permitted to do so." This court said that this case appears to have been decided upon a sound principle, and it could not be distinguished from that of *La Farge* v. *Herter*, then under consideration, and that all the proofs offered in the latter case to show the bond and mortgage void for usury, were rightfully excluded by the judge at the circuit. It is seldom that a case so directly in point with that now under consideration is met

with, as that of *Miller* v. *Kerr* (*supra*). There, as here, the plaintiff asks the court to release him from his agreement, the last contract made by him with the principal debtor, upon the ground that he, knowingly and willfully, and in violation of the statute against usury, made the agreement to give the principal debtor time for the payment of his debts. He asks the court to convict him of a crime, that he may maintain his action against the principal debtor before the time has expired which he gave him by this agreement, for the payment of the debt, and that he may retain the liability of the sureties, notwithstanding such extension without their assent, on the ground that the agreement was a criminal act, illegal and void. In my opinion, the aid of the court cannot be invoked for such a purpose. Neither has the distinction alluded to by RUGGLES, Ch. J., in *La Farge* v. *Herter*, any just application to the facts of this case, namely, that although a party to a fraud is estopped from setting up, for his own advantage, the fraud, yet, if his opponent alleges and proves it, as a part of his own case, the guilty party will then be entitled to the benefit, while he incurs the disadvantage resulting from such a state of things. (Citing Broom's Legal Maxims, 322.)

In this case the defendants neither set up or proved any usurious agreement. That contained in their answer, for aught that appears thereby, was a valid and lawful agreement, and it is the plaintiff who comes in with facts, to show that it was usurious and void. If the defendants had set forth facts in their answer, and claimed that the agreement was void for usury, then the principle involved might have been relevant. Upon the facts of this case it is not.

If the case of *Vilas* v. *Jones* (1 Comst., 274) can be held as laying down a different doctrine, it must be regarded as overruled by the subsequent case of *La Farge* v. *Herter* (5 Selden), *supra*. But I do not understand that any such point was decided in *Vilas* v. *Jones*. The doctrine is stated as being the opinions of BRONSON, J., and JEWETT, Ch. J., that an agreement made by a creditor with the principal debtor, to forbear the payment of the debt in consideration of an usurious premium paid for such forbearance, is void,

and therefore cannot operate to discharge the action.    Two
authorities only are referred to by Judge BRONSON, one of
which (*Tudor* v. *Goodhue*, 1 B. Mon. L. and Eq. R., 322)
held that an agreement by the creditor to extend the time
for payment on a promise *to pay* an usurious rate of inter-
est for the forbearance, did not discharge the surety for
the reason that as the *promise* of the debtor to pay the usury
was void, there was no consideration for the promise of the
creditor to forbear, and consequently no binding contract on
his part for time.    The other case, that of *Kenningham*
v. *Bedford* (id., 325), was a later case, and identical in
principle with that now under consideration.    There, as
here, the usury *was paid* at the time the creditor promised
to forbear, and the court held that the surety was discharged;
that although the contract was void as to the debtor, it was
valid as to the creditor, and if he should sue before the
expiration of the stipulated forbearance, the other party
might have an action for damages.    This decision is in har-
mony with the principles of *La Farge* v. *Herter*, and the
other cases in our courts already adverted to.

I am satisfied that it expresses correctly the law, and it
follows that the judgment appealed from should be affirmed
with costs.

BROWN, PORTER and POTTER, JJ., and DENIO, Ch. J., con-
curred in this opinion.

DAVIS, J., dissenting.    This action is on a promissory
note.    The only defense set up is that the action is prema-
turely brought.    On the trial it was shown that after the
note in suit fell due, it was agreed between the plaintiff and
the defendant, James Wagoner, who was the principal in
the note, that the time for the payment of the note should
be extended on payment to said plaintiff of property of the
value of $13, as the consideration for such extension; which
payment was afterward made and received.    The action was
brought before the expiration of the extended time.    The
only question in the case is, whether the plaintiff can treat
the agreement of extension as void, under the statute against

usury. The courts below held that he could not, and that if the defendants chose to affirm and insist upon the usurious agreement, the party who had received the usury was bound by it.

In *La Farge* v. *Herter and Dillenbeck* (9 N. Y., 241), the action was debt on a judgment against Herter as principal, and Dillenbeck as surety. It was shown that after execution and levy on Herter's goods sufficient to have satisfied the judgment, Herter gave to La Farge a bond and mortgage, which were taken by the latter in satisfaction and discharge of the judgment. The levy was abandoned, and a receipt given by La Farge to Herter for the amount due on execution, and the attorney indorsed the same satisfied. The plaintiff offered to show in answer to this defense, that the mortgage was usurious; the court excluded the evidence, and this court affirmed the judgment of the Supreme Court, thus establishing that a usurer is not allowed to show that an obligation which he has taken as satisfaction of a prior demand is usurious, in order to avoid the effect of such obligation as a satisfaction of such prior demand. The opinion of this court was pronounced by RUGGLES, Ch. J., and no allusion was made to a former case in this court, to which reference is hereinafter made. It is to be observed that the contract in *La Farge* v. *Herter* was completely executed. Nothing remained to be done by either party for its consummation, and the action of the defendants in affirming the bond and mortgage as a payment of the judgment, in no sense called upon the court to enforce an agreement not yet fully performed in all its parts.

In *Vilas* v. *Jones* (1 Comst., 274), one of the points made was that the complainants, who were sureties in the original debt, were discharged, by the creditor giving further day of payment to their principal without their knowledge or consent. The case was disposed of by this court on points foreign to the question now under consideration; but three very eminent members of the court, JEWETT, Ch. J., BRONSON, and GARDINER, JJ., concurred in the position that neither the promise nor the payment of usury is a good considera-

tion for a promise by the creditor to give time. "It has not been suggested," said BRONSON, J., "that a promise to pay usury in future, an engagement that is utterly void, can be regarded as any consideration whatever for a promise by the creditor to extend the time of payment. And undoubtedly he may sue the next moment. And I am wholly unable to see how usury paid down can make the case any better. The contract for usury is equally void whether the money is actually paid, or only promised to be paid at a future day. The statute makes no distinction, but, on the contrary, has declared void *all* contracts tainted with usury. Though the debtor parts with the money, it still belongs to him; and he may sue and recover it back the next moment. (1 R. S., 772, § 3.) This shows that there is no force in the suggestion, that although the creditor cannot legally receive, the debtor is not forbidden by law to give money at a usurious rate for the forbearance."

And JEWETT, Ch. J., said: "It is conceded that an agreement to extend the time of payment in consideration of an executory agreement to pay a usurious premium is void, and does not suspend the remedy of the creditor against the principal debtor. But the distinction between that case and the case where the agreement is *executed* on the part of the debtor by an actual payment of the usurious premium, rests upon no solid foundation. In either case the statute declares the contract void, and the debtor can recover back the money so paid by action." But that case determined nothing upon this point, and is entitled to no greater weight than should be given to the opinions of eminent jurists upon questions not necessarily adjudicated by the final decision of the cause, in which their opinions were expressed.

Nor, in my opinion, can it be claimed that *La Farge* v. *Herter* (*ubi supra*) has determined the question now presented. It is, so far as this court is concerned, *res nova*, and should be treated as such.

Amid some apparent conflict there is yet a clear line of distinction between *La Farge* v. *Herter* and the question discussed in *Vilas* v. *Jones*. In the former, as has already

been seen, the agreement had been completely executed in all its parts, and by all parties. In the latter the agreement was regarded as executed by one party who had paid the consideration for performance in future by the other. The question in the case now before us is of the latter class. An agreement for an extension of the time of payment of a debt past due, is simply an agreement to refrain from enforcing it during the stipulated period; during that time the contract on the part of the creditor is executory and continuous. It is, in the nature of things, neither executed nor capable of execution till the full lapse of the stipulated time, so far as the creditor is concerned, while by the payment of the consideration it may be fully executed by the debtor. After it is completely executed by both parties, I apprehend such an agreement must necessarily fall within the rule of *La Farge* v. *Herter*, and the usurer could not be permitted to allege the nullity of the agreement for the purpose of reinstating himself to any right he had lost by it, either against a principal debtor or a surety. But to my mind there is a clear distinction between leaving a usurer in the position in which his *executed agreement* places him, and enforcing the performance by him of a usurious agreement yet executory on his part. When asked to execute or stand by such an agreement yet to be performed, I do not see why, on any sound principle, he may not assert its illegality as an excuse for its non-performance. It is an argument more specious than sound, to say that the statute was designed to protect the borrower and not the lender of money, and, therefore, the lender can never assert the illegality of an agreement made in violation of it. The fallacy of this is easily illustrated. Suppose a borrower has actually paid to the lender $100, as the usurious premium agreed upon in consideration of his promise to loan one thousand dollars for six months, and the usurer afterward refuses to make the loan, will any court of justice enforce the agreement or award damages for its non-performance? Clearly not; and the only remedy of the borrower would be to recover back the usurious premium *by favor of the law*. The statute, in making usury a crime, and declar-

ing void all contracts in violation of it, for reasons of policy has clothed the borrower with certain privileges favorable to his supposed helplessness; but it was never designed to enble him to compel the lender to commit an offense against the it. In truth, while it shows no favor to the usurer, it leaves him the right which the common law gives him — *to assert. the illegality of an act as a reason for not performing it.* An agreement for a usurious consideration in fact paid, to forbear the collection of a demand for any stipulated period, until the expiration of the period, is executory, and courts will not enforce its performance, even against the usurer, because of its illegality. In all such cases *potior est conditio defendentis,* however immoral or illegal his conduct; and the party of whom performance of such an agreement is sought, always occupies towards it the relation of defendant.

But such an executory agreement is not only in violation of the statute but is without consideration. The money, where that is the consideration, is all the while the property of the borrower, and may be recovered back at once without a demand. The property in this case paid, remained the property of James Wagoner, and trover and replevin would lie to recover it without a demand, although delivered by him personally to plaintiff. (*Schroeppel* v. *Corning,* 5 Denio, 236; 10 Barb., 576; 2 Seld., 107.) It is difficult to see how such money or property, to which the title in law has never passed, can be a sufficient or good consideration for an agreement. It operates, if not recovered back, as payment of so much towards the original debt, and in that view the creditor gets nothing but his own, and therefore has no consideration for his promise.

I think, therefore, upon the facts of this case, the court below erred, and that the judgment should be reversed, and a new trial ordered, with costs to abide event.

WRIGHT and CAMPBELL, JJ., concurred in this opinion.

Judgment affirmed.