WILLIAM L. POMEROY et al., Appellants, v. LEVI TANNER, Respondent.

S. W . & Co. were engaged in the manufacture of goods, which they con-
signed to plaintiffs for sale, with liberty to draw for a certain propor-
tion of their value, the drafts being sold and proceeds credited to the
drawers.   On the 23d of June, 1870, said S. W. & Co. borrowed of plain-
tiff $5,000, giving as security two notes, one at four and the other of
five months, indorsed by defendant, for their accommodation.   In
August, 1870, S. W. & Co. gave their note, dated June 23, for the
amount of the loan, payable one day from date.   After the notes
endorsed by defendant became due, an agreement was made between
plaintiffs and the makers, without defendant's consent or knowledge,
that said makers should draw time drafts on plaintiffs to cover the loan,
which plaintiffs agreed to accept and sell, and thus be kept in funds to
the amount of the loan.   In pursuance of the agreement, drafts were
drawn, accepted and sold.   In an action upon the notes, held, that by
the new agreement there was a clear intention on the part of both par-
ties to extend the time ; that the agreement was for a sufficient consid-
eration, and was valid; and that thereby defendant was discharged.
Also, that the loan was not made on the one-day note ; but that it was
immaterial whether the notes in suit were given for the loan or as collat-
eral ; in either case, a valid agreement extending the time of payment
operated to suspend the right to prosecute, and so discharged the
indorser.

(Argued June 22, 1877 ; decided September 25, 1877.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department, affirming a
judgment in favor of defendant entered upon the report of a
referee.

This action was brought against defendant as indorser of
two promissory notes, dated June 22, 1873, made by S.
Wright & Co., each for $2,500, payable the one at four
months, the other at five.

The facts as found by the referee were, in substance, as fol-
lows:    S. Wright & Co. were manufacturers of woolen goods,
which they consigned to plaintiffs, who were commission
merchants in New York, for sale.    Wright & Co. were at
liberty to draw, and did draw, drafts on the plaintiffs to

three-fourths the value of the goods consigned, which were accepted by plaintiffs, sold, and the proceeds credited on account to Wright & Co.   On the 22d June, 1871, the notes in suit were made and delivered to plaintiffs as security for a loan, defendant indorsing them for the accommodation of Wright & Co.   In August, 1870, Wright & Co., at the request of plaintiffs, gave to the latter their note for the amount of said loan, dated June 23, 1871, payable one day after date.   After the notes indorsed by defendant became due, plaintiffs agreed with Wright & Co. that if the latter would furnish three drafts or bills drawn by them on plaintiffs to cover said loan, so that plaintiffs, by the acceptance and sale of them, could be kept in funds to the amount of the loan, that plaintiffs would extend the time of payment of the loan during the time the drafts were maturing.   In pursuance thereof, Wright & Co. furnished and delivered drafts to plaintiffs to cover said loan, which the plaintiffs received, accepted and sold, and the proceeds were credited in the general account of Wright & Co., they being charged with the drafts sold, which drafts before maturity were replaced by others.   This agreement as to extension of time was without authority from, or consent or knowledge of, defendant.

Further facts appear in the opinion.

*A. P. Whitehead*, for the appellants.   There was no binding agreement to extend the time of payment of the original debt.   (*Reynolds* v. *Ward*, 5 Wend., 501; *Gahn* v. *Mincewicz*, 11 id., 312; *Draper* v. *Romeyn*, 18 Barb., 166; *Van Rensselaer* v. *Kirkpatrick*, 46 id., 194; *Lowman* v. *Yates*, 37 N. Y., 601; *Halliday* v. *Hart*, 30 id., 474; *Parmelee* v. *Thompson*, 45 id., 58; *Philpot* v. *Brient*, 4 Bing., 717; *Pearce* v. *Wilkins*, 2 Com., 469; *Suydam* v. *Westfall*, 4 Hill, 211; 2 Den., 205; *Wright* v. *Carlinghouse*, 26 N. Y., 539; *Kellogg* v. *Olmstead*, 25 id., 189.)

*John F. Seymour*, for the respondent.   The agreement of extension made by plaintiffs' without the knowledge or con-

sent of defendant discharged the latter from all liability as indorser. (*Place* v. *McIlvain*, 38 N. Y., 96; *Billington* v. *Waggoner*, 33 id., 32; *Hubbley* v. *Brown*, 16 J. R., 70; *Hart* v. *Hudson*, 6 Duer, 306, 307; *Fellows* v. *Prentiss*, 3 Den., 512; *Rees* v. *Berrington*, 2 Ves. Jr., 540; *Meyer* v. *Weller*, 5 Hill, 463, 465.) The agreement to extend the time of payment of the notes was made upon legal and sufficient consideration, and binding upon all the parties. (1 Pars. on Con. [5th ed], 431; *Miller* v. *Drake*, 1 Cai., 45; Chitty on Bills, 347, 569, 649, 81; *Suydam* v. *Westfall*, 2 Den., 217; *Griffiths* v. *Reed*, 21 Wend., 502; *Dorlon* v. *Christie*, 39 Barb., 610; *Myers* v. *Walles*, 5 Hill, 464, 465; *Gould* v. *Robson*, 8 East. 576; 33 N. Y., 31; *LaFarge* v. *Herter*, 9 id., 241; *Miller* v. *Kerr*, 1 Bayley, 4; *Mann* v. *Eckford*, 15 Wend., 515; *Draper* v. *Trescott*, 29 Barb., 401; *Boughton* v. *Smith*, 26 id., 635; 38 N. Y., 96; *Smith* v. *Townsend*, 25 id., 479; 3 Den., 512; 6 Duer, 294; 5 Wend., 501; 5 Hill, 463.)

MILLER, J. The question to be determined on this appeal is, whether there was a valid agreement to extend the time of payment of the notes in suit which operated to suspend the right of action of the plaintiffs upon the same, and thereby discharged the defendant as indorser. The notes were made and delivered as security for a loan made by the plaintiffs to the makers of the amount of the same, as appears by the findings of the referee, with sufficient evidence to support the same. The referee also found that at and prior to the time when the notes bear date, the makers were engaged in the manufacture of woolen goods, which were consigned to the plaintiffs to be sold, with liberty to the makers to draw upon the plaintiffs a certain proportion of their value, which drafts were accepted and sold, and the amounts realized, credited to the account of the drawers. That after the notes became due, an agreement was entered into by which, in consideration that the makers of the notes would furnish and deliver to the plaintiffs, drafts or bills

drawn by them on the plaintiffs to cover the loan of five thousand dollars, so that the plaintiffs could be kept in funds by the acceptance and sale of such drafts to the amount of the loan, the plaintiffs would extend the payment of the loan during the times said drafts were running to maturity.

The findings last mentioned are also supported by the testimony, and it is evident, I think, that the loan was not made on the one-day note, which was not asked for or suggested until July after the notes were made, nor given until August, and was not mentioned nor in existence when the loan was made. True, it bore date the 23d of June, the day after the notes in controversy were dated; but its evident purpose was to remedy the defect in the notes in suit, in not providing for the payment of interest. It was an arrangement in regard to which the defendant had no knowledge, and could not, therefore, affect his rights. But whether the notes in suit were collateral to, or given for the principal loan, cannot affect the defendant, for in either case the giving of time operated to suspend the right to prosecute the same, if a valid agreement was made to that effect. (*Myers* v. *Welles*, 5 Hill, 464, 465.) The arrangement thus made was carried into effect until the failure of the makers in 1873, the prior indorser, who was solvent when the notes matured and for more than a year afterwards, having also failed and become insolvent.

By the agreement, there was a clear intention on the part of both parties to extend the time for the collection of the notes, and the acceptance of the drafts, and the sale of the same to third parties suspended the right of the plaintiffs to sue on the notes ; and, within the rule laid down in the reported cases, released the indorsers. (*Billington* v. *Wagoner*, 33 N. Y., 31; *Place* v. *McIlvain*, 38 id., 96; *Fellows* v. *Prentiss*, 3 Denio, 512; *Myers* v. *Welles*, 5 Hill, 463).

While such an agreement was in force no action could be maintained, and no recovery had for the amount of the notes; and it would have been a good defense, that the time for the payment of the notes had been extended. Neither the

plaintiffs nor the defendant, if he had paid up the notes, would have been in a position to enforce the collection thereof so long as the agreement remained in force. The contract was, that in consideration of the drafts, the plaintiffs should delay payment, and this we think they were bound to do, so long as the contract was fulfilled by the makers. This contract to extend the time of payment was founded on a valid and sufficient consideration. The plaintiffs had a right to enforce the collection of the notes for the loan, and agreed that if money to that amount should be furnished by means of the drafts, that then they would delay payment of the notes. The additional drafts were drawn and delivered, the necessary stamps were placed on the same, and they were sold in the market at a discount, at the expense of the drawers. They thus sustained an actual pecuniary loss, besides the labor and trouble of preparing the drafts and forwarding the same to the plaintiffs. This was a sufficient consideration to support an agreement, extending the time of payment. Suppose the drafts had been discounted and money received, could they have held the notes?

I do not see why the makers of the drafts did not, by the arrangement made, assume an original liability to the same extent as if they had given a new note or a check, and thus are brought directly within the cases which hold, that the taking of a bill or draft from the debtor, payable at a future day, suspends until then the creditor's right of action, and operates as an extension of credit, by which the indorser not assenting to the transaction is discharged. (*Dorlon* v. *Christie*, 39 Barb., 614; *Elwood* v. *Diefendorf*, 5 id., 398; *Hubbell* v. *Carpenter*, id. 520; *Place* v. *McIlvain*, 38 N. Y., 96; *Lowman* v. *Yates*, 37 id., 601.) The only possible distinction which can be drawn between the case of a note payable *in futuro* and the one at bar is, that in the latter the draft, when accepted, was a promise by the acceptors to pay the drawers; hence, on its face, no action could be maintained by the plaintiffs upon it against the drawers. But this

could make no difference, for upon proof of the fact that the acceptance was for the drawers' accommodation, which would be entirely competent, the law implies an undertaking on the part of the drawer to indemnify the acceptor, who, in this implied obligation, has an action against the drawer. (*Griffith* v. *Reed*, 21 Wend., 502; *Suydam* v. *Westfall*, 2 Denio, 217.)

The plaintiffs thus would be entitled to recover against the drawers the same as upon a bill made by them, and in both cases I think that the agreement to extend the time of payment would be valid, and a lawful defense to an action upon the original notes. It is said that the making of the drafts and the raising of the money upon them was not a damage to the drawers, but a benefit. It is, as we have seen, quite manifest that the drawers were subjected to some loss, and very likely the delay in the payment of the notes may have been of some advantage to them; but, even if it was a benefit, it by no means follows that the agreement cannot be enforced.

That the plaintiffs derived some benefit from the transaction is a fair intendment, as it enlarged their business operations with the drawers and increased their means of profits.

Upon the facts presented, it is evident that the plaintiffs, by the arrangement made, had precluded themselves from prosecuting the note, and upon no legal principle did the defendant possess any right which the plaintiffs did not have.

The defendant was therefore discharged, and the judgment must be affirmed.

All concur.

Judgment affirmed.