Lemmon *v.* Whitman *et al.*

---

No. 7692.

## Lemmon *v.* Whitman et al.

PROMISSORY NOTE.—*Sureties.*—*Agreement with Principal.*—*Extension of Time for Payment.*—*Demurrer to Evidence of Sureties Defendants.*—*Valid and Binding Contract.*—*Discharge.*—Where, upon trial of an action upon a promissory note, dated July 5th, 1871, payable in one year, with interest at ten per cent. after maturity until paid, two defendants gave evidence tending to prove a plea that they executed the note as sureties only, which the payee knew, and that the time for payment had been extended by an agreement between the payee and the principal debtor,

Lemmon v. Whitman *et al.*

without their consent, and the plaintiff's demurrer to defendants' evidence was overruled, the Supreme Court, being satisfied from the evidence that a valid and binding contract for an extension of time had been made, without the consent of the sureties and upon an executed consideration, affirmed the judgment.

SAME.—*Interest at Ten Per Cent. Contracted for.—Interest Paid at Twelve Per Cent in Advance.*—In such case, evidence that the note included interest for one year in advance at ten (or twelve) per cent., that, in July, 1873, interest at ten per cent. for the year then past, and fifty dollars additional for one year's forbearance, was paid, that, in July, 1874, and July, 1875, each, a like payment was made, and forbearance contracted for, all without the consent of the sureties, shows a valid and binding contract for an extension of time, which operated to release the sureties, and sustained their plea.

SAME.—*Recoupment.— Usurious Interest.—Lawful Interest.*—The rule of recoupment is to credit the amount of the payment of usurious interest at the date of payment, thus paying the accumulated lawful interest, or cutting down the principal.

SAME.—*Consideration for Extension.*—The payment of usurious interest, for a time already elapsed, on a note or other obligation to pay money, constitutes a good consideration for an agreement to extend the time of payment, though under the law the debtor or his sureties, if they choose, may recoup the amount so paid.

SAME.— *Taint of Usury.—Borrower may, but Lender may Not, Plead Usury. —Voidable Contract.*—The borrower may set up usury for the purpose of avoiding a contract tainted with it, but the lender can not. Such a contract is not absolutely void, but voidable only on account of the usurious taint, and that not at the option of the lender, but of the debtor.

SAME.—*Rescission and Recoupment.—Restoration by Creditor will not Avoid Contract for Extension.*—The right of rescission and recoupment is personal to the debtor, his heirs, representatives or sureties. The creditor who has received the usury has no right to restore it or credit it on the debt, and thereby release himself from his engagement to give time, especially after the stipulated time has gone by, on the ground that his agreement was without sufficient consideration.

PRACTICE.—*Pleading.—Demurrer to Evidence.—Pleading Definite and Unequivocal.—Proof Indefinite and Equivocal.*—A pleading must be definite and unequivocal, but the proof necessary to support the plea, especially upon a demurrer to the evidence, may be both equivocal and indefinite, and yet be deemed sufficient.

From the Pike Circuit Court.

*J. E. McCullough, J. H. Miller* and *E. P. Richardson,* for appellant.

*A. Iglehart*, *E. A. Ely* and *C. H. Burton*, for appellees.

WOODS, J.—The appellant sued the appellees upon a promissory note. The defendants Adams and Morgan answered, admitting the execution of the note, but averring that they executed the same as sureties only, and that, knowing this fact, the payee had made an agreement with the principal debtor for an extension of time for the payment of the note. The note bears date July 5th, 1871, and is payable to the plaintiff twelve months after date, "with interest at ten per cent. after maturity until paid." Upon a trial by jury, the appellant demurred to the evidence adduced by said defendants. The court overruled the demurrer and gave judgment accordingly. The error assigned upon this ruling is the only one in support of which the counsel for the appellant has cited authority or made any argument.

There can be no doubt, on the evidence set forth in the demurrer, that the appellees were, and were known by the payee of the note to be bound as sureties only, and that they gave no consent to any agreement for an extension of the time of payment to the principal debtor. The only question is, whether the evidence is such as reasonably warrants an inference of a valid and binding contract for an extension of the time of payment. We give so much of the evidence as bears on this point:

George Whitman testified: "I gave this note as principal, and the other defendants, Ferguson, Adams and Morgan, are sureties for me; the interest for twelve months was put in the note; at the time I gave the note to Elijah Lemmon, I received from him two thousand dollars; the balance is interest put in the face of the note; I don't remember that there was any contract with the sureties about the rate of interest, except as stated in the note; there was nothing said in the presence of the sureties about the rate of interest, that I know of; I don't think any of the sureties were present when the money was paid to me,

or when there were any conversations about the rate of interest; I agreed to give the note, with $250 of interest included, and I did give it that way; there was nothing said, at that time, as to what should be the rate of interest when the note became due; Mr. Lemmon, the payee, knew, at that time, that I was the principal, and the other makers of the note were sureties; I don't recollect that anything was said about interest when the note became due; about July 5th, 1873, I paid Lemmon the first interest; I paid him twelve per cent. interest, that is, I paid him ten per cent. interest and fifty dollars in addition; this was all paid as interest for one year; he said as long as I would pay him ten per cent. interest, and fifty dollars in addition, from year to year, annually, he would wait on me; I never made a calculation of what it amounted to, but I paid him the ten per cent. and fifty dollars as interest for one year; after that I paid interest at the same rate up to July, 1875; I don't remember whether I paid at the same rate in July, 1875, or not; I know I paid ten per cent. then, but do not remember whether I paid the fifty dollars extra for that year or not; it was Mr. Lemmon's own proposition that I should pay fifty dollars extra; he said that that was what men had to pay at the bank; I paid the fifty dollars extra to make the interest up to twelve per cent.; the fifty dollars was not to be credited upon the note; I never said anything to the sureties about the rate of interest I was paying, and they did not know it, so far as I know; in 1874, about the 1st to the 5th of July, Mr. Lemmon came after his interest again, and again I paid him $250 interest, and the $50 in addition; it may have been $225 and the $50 in addition that I paid him; I paid him enough, in all, to make it up to twelve per cent.; he said, at that time, that he did not want the principal at all, as long as I would pay him the twelve per cent.; he said he would not push me or collect the note.

as long as I paid the interest, at that rate, from year to year; I paid the interest at that rate in 1873 and 1874; I am not certain as to 1875; Mr. Lemmon said he would wait on me as long as I would pay the interest at twelve per cent.; I executed another note to Mr. Lemmon about a month before I executed this note; I think before; it may have been about a month after; in 1874 I executed a mortgage to Mr. Lemmon to secure both these notes; I think it was in August, 1874; I went to see him and told him I would give the mortgage, and told him to come down and select the land he wanted; I had close to fifteen hundred acres of land in Pike county; he said he would come down and fix it up and take the mortgage; there was nothing said at the time about the time of paying the notes; he came down to Petersburg in a few days after that; nothing said at that time about extending the time for the payment of the notes; I gave him a mortgage on 520 acres of land in Pike county, about a mile east of Winslow, worth then about twenty dollars per acre; it was in sections thirty-three and thirty-four in township one south, range seven west; I spoke to Ferguson about giving mortgage before I gave it, but not to Morgan or Adams; Lemmon never spoke to me about having got notice from Ferguson to sue; the fifty dollars that was paid extra in July, 1874, was not to be accredited on the note; it went to make up the twelve per cent. interest; as I stated before, Mr. Lemmon said he would wait just as long as I would pay him the twelve per cent. interest.''

Cross-examination: ''At the date of the note in suit, twelve per cent. was added in as interest; the amount I paid in July, 1873, I paid as one year's interest for the then past year, and in July, 1874, the amount I paid Mr. Lemmon again was paid as interest for the then past year; all that I paid was on past interest; I did not pay any of it as interest in advance; the note bore ten per cent. interest after maturity,

and then to make it up to twelve per cent. for the past year, I paid him the fifty dollars ; he said he would wait on me as long as I paid him the twelve per cent. interest."

The mortgage referred to was put in evidence, but it describes lands in township number two, instead of one as stated by the witness.    There is other evidence indicating that the mortgage misdescribed the land in this respect. Besides the note in suit, the mortgage, which bears date August 5th, 1874, purports to secure a second note for $2,500, bearing date June 15th, 1872.

Directing our attention to the transaction of July 5th, 1873, the jury might, not unreasonably, have said that, as described by the witness, it amounted to this :    The creditor said to his debtor, you allowed me twelve per cent. the first year, and put it into the face of the note ; for the year now passed since its maturity, the note calls for only ten per cent., and you never promised to pay me any more ; but do you now pay me the interest due, and fifty dollars in addition, to make it up to twelve per cent. for the past year, and I will let the note run another year, and so long as you pay the extra sum from year to year, the note may run ; the debtor assented, and paid the interest and the extra fifty dollars ; and in 1874 the same transaction, upon the same understanding, was repeated ; and in this instance, possibly the payment was made before the 5th of the month, by from one to four days. Stated more succinctly, the parties each time agreed for another year's extension, in consideration of the payment then made of fifty dollars in excess of the stipulated interest, for the past year, and of the agreement of the debtor to pay a like extra sum upon the interest for the ensuing year, and from year to year thereafter, so long as the debtor should choose to do it.

The fact that the fifty dollars were applied to the interest for the past year does not affect the question.    The debtor was under no obligation or promise, written, oral or im-

plied, to pay more than ten per cent. for the first year after the maturity of the note, and if the parties in July, 1873, made an agreement that the debtor should pay $50 on the past year's interest, and a like sum on the next year, in excess of the stipulated rate, to be paid at the end of the year, the sum paid down upon the year past would constitute the consideration for the extension as much as the sum to be paid at the end of the time; and more, indeed, for the promise to pay could not be enforced, and therefore was no consideration at all, while the payment made was an executed consideration, and good, unless the fact that it was in excess of ten per centum, the lawful amount for which a valid contract could be made, made it inoperative. This brings us to the question whether the payment of usurious interest, for time already elapsed, on a note or other obligation to pay money, can constitute a good consideration for an agreement to extend the time of payment, when under the law the debtor or his sureties, if they choose, may recoup the amount so paid.

In *Harbert* v. *Dumont*, 3 Ind. 346, it was held that such an agreement for an extension of time, made under the interest law of 1845, which did not authorize the recovery or recoupment of the interest, was valid, because beneficial to the recipient of the usurious interest. In *Shaw* v. *Binkard*, 10 Ind. 227, it was held that such an agreement did not discharge the surety, because, under the law then in force, the taking of usurious interest was punishable by fine, and the interest recoverable by the debtor, and the contract for extension therefore not binding. In *Redman* v. *Deputy*, 26 Ind. 338, followed by *Calvin* v. *Wiggam*, 27 Ind. 489, interest at the rate of ten per centum in advance, for a stated time, was paid, and the surety was discharged, it being held that the payment of legal interest in advance was a sufficient consideration, and the contract was not invalidated on account of the usurious excess.

In *Cross* v. *Wood*, 30 Ind. 378, the decision rests on the ground that the usurious interest paid in advance, under the law as it then was, was not recoverable directly or indirectly. The cases of *Charlton* v. *Tardy*, 28 Ind. 452, *Hamilton* v. *Winterrowd*, 43 Ind. 393, *Abel* v. *Alexander*, 45 Ind. 523, and *White* v. *Whitney*, 51 Ind. 124, go no further than *Redman* v. *Deputy*, *supra*, and are to the effect that the payment of interest in advance is a good consideration, though paid at an usurious rate. In *Abel* v. *Alexander*, *supra*, after a citation of some of the aforenamed cases, it is said that the ruling in these cases was based upon two grounds: 1st. That the payment included legal interest; 2d. That, although the usurious interest might be recovered back in an independent action, or might be recouped in an action upon the note, the use of the usurious interest constituted a sufficient consideration to support an agreement to extend the time of payment. But the well settled rule of recoupment is to credit the amount of the payment of usurious interest at the date of payment, the effect of which, of course, is either to pay the accumulated interest or to cut down the principal of the obligation, and thereby stop *pro tanto* the accruing of further interest; and when such credit has been given, after the maturity of the obligation, it is evident that the creditor has the use only of what is justly his own, and the use of his own can afford no consideration to support an obligation in favor of another. See *Markel's Adm'r* v. *Spitler's Adm'r*, 28 Ind. 488; *Fensler* v. *Prather*, 43 Ind. 119. While, therefore, these cases rest on the very solid ground that the payment of interest in advance is a sufficient consideration for the contract, they are not authority for the proposition that the payment of a sum as usurious interest, or of a sum which may be recouped or recovered as usurious because in excess of the lawful contract rate of interest, when not applied, nor intended to be applied, as interest in advance, is a good consideration for such contract.

The statute under which *Shaw* v. *Binkard*, *supra*, was decided, was peculiar, making the receipt of the usurious interest an illegal and penal act, and authorizing the recovery of the sum illegally paid, but without interest and without costs of suit. Recoupment was not provided for. In effect, the case denied the debtor the benefit of his agreement for further time, and permitted him to recover only the actual amount paid out upon it. The case of *Brown* v. *Harness*, 16 Ind. 248, in so far as it is now pertinent, seems to have had but little consideration. Under what law the payments then set up were made, the opinion does not disclose, and it is not manifest why the payments stated were not treated, as in the later cases, as payments of interest in advance, and therefore operative to extend the time. The case of *Chrisman* v. *Perrin*, 67 Ind. 586, can hardly be deemed an authority. The third paragraph of answer in that case expressly averred an agreement, made on a day named, to extend the time of payment for one year, and yet it was said to be defective because it did not aver a definite time to which the extension was granted; and then adding, that it did not state such a contract as would bind the payee, concluded correctly enough, that the ruling in reference to the paragraph was harmless, because the same matter was pleaded in the fourth paragraph.

The ruling on the second paragraph of the answer in *Abel* v. *Alexander*, *supra*, does not, as counsel claim, cover the question. The consideration for the extension there alleged, as the plea was construed by the court, did not include the payment made and credited, but only "the agreement and promise of Alexander to continue to pay interest on said note at the rate of fifteen per cent." The construction placed upon the plea was too narrow, but the decision, having been expressly based upon a stated construction of the answer, is not authority for a conclusion in reference to a different construction. It may properly be observed in

reference to the two cases last cited, that the questions in them were questions of pleading ; while here it is of inference from the proofs. The averments of a pleading must be definite and unequivocal, but the proof necessary to support the plea, especially upon a demurrer to the evidence, may be both equivocal and indefinite, and yet be deemed sufficient. *Miller* v. *Porter*, 71 Ind. 521.

From this review of the cases, it may fairly be said that the question under consideration is an open one, in this State, to be decided on reason and principle.

It is well settled that only the debtor and those bearing to him certain relations of privity or of identity of interest, can take advantage of the right to recover or to recoup usurious interest which has been paid. *Studabaker* v. *Marquardt*, 55 Ind. 341. To hold, therefore, that secret agreements between the principal debtor and the creditor, such as were made in this case, may be made and carried out for years, both parties obtaining what they bargained for, and yet to say that in respect to the sureties the agreements were not valid, because ultimately the debtor may, if he shall choose to do it, claim a credit for the usurious payments, or the sureties themselves may claim the same credits, if they chance to learn of the facts, would tend manifestly to promote deceit and injustice. It would, moreover, be in violation of the spirit of the law which favors the surety, and demands of the creditor the practice toward him of the utmost good faith. There is no conceivable equity in favor of such a rule, and the only legal basis for it is a bare technicality, which, in most cases, is false and wrongful in its application. It declares that to be no consideration which the debtor made a sacrifice to pay, and which the creditor accepted as desirable and sufficient, and of which, in many, and perhaps in most, cases, he gets the full benefit.

But even this technical doctrine which reverses the theory of creation, that all things were made of nothing, and makes

nothing of something, is opposed by the other doctrine, already alluded to, that the right to plead the usury is the personal privilege of the debtor. The creditor should not be permitted to obtain a benefit by rescinding his usurious exactions. The law against usury was designed for the purpose of shielding the debtor against the creditor, but the doctrine contended for would make it a two-edged sword in the latter's hand.

In *Billington* v. *Wagoner*, 33 N. Y. 31, the plaintiff claiming and insisting that the agreement was void, on the ground that it was usurious, and, therefore, did not amount to a consideration to extend the time of payment, the court said: "But assuming that the agreement, made by the plaintiff with the principal debtor, was usurious, and therefore, in the language of the statute, void, can the plaintiff interpose that objection? The defendants claim it to be a valid and binding agreement. They are estopped from ever hereafter setting up that it was void, and, assuming it to be valid, the consequences resulting therefrom are the discharge of the sureties and the postponement of the plaintiff's right of action against the principal debtor, until the expiration of the postponed time of payment. Although the statute uses the language that any usurious note, contract, etc., shall be void, yet it is not always so regarded, as it is in the power of the party who can avail himself of that defence to waive it. * * * But this defence or objection to the contract, that it is void on account of usury, can only be alleged or set up by the party bound by the original contract to pay the sum borrowed, or his sureties, heirs, devisees or personal representatives." *Reynolds* v. *Ward*, 5 Wend. 501.

In *La Farge* v. *Herter*, 4 Barb. 346, the court says: "It does not lie in the mouth of La Farge, to set up his own illegal conduct, and to allege that his own bond and mortgage are void for usury; and elect to treat them as void for that reason. It is the victim of the usury, and not the usurer

Lemmon *v.* Whitman *et al.*

himself, that can set up against a contract that it is usurious and void."

In *La Farge* v. *Herter*, 5 Seld. 241, RUGGLES, C. J., said : "The taking of usury is a misdemeanor by statute, and the agreement to take it is in the eye and in the language of the law, corrupt. The parties, however, do not stand *in pari delicto*. It is oppression on one side and submission on the other. The borrower therefore may set up usury for the purpose of avoiding a contract tainted with it, but the lender can not."

To the same effect see the following cases, many of which, and especially the more recent, fully support the conclusion which we have announced : *Kenningham* v. *Bedford*, 1 B. Mon. 325 ; *Billington* v. *Wagoner*, 33 N. Y. 31 ; *Kelly* v. *Gillespie*, 12 Iowa, 55 ; *Corielle* v. *Allen*, 13 Iowa, 289 ; *Wheat* v. *Kendall*, 6 N. H. 504 ; *Grafton Bank* v. *Woodward*, 5 N. H. 99 ; *Danforth* v. *Semple*, 73 Ill. 170 ; *Myers* v. *First National Bank, etc.*, 78 Ill. 257 ; *Hamilton* v. *Prouty*, 50 Wis. 592 ; *Austin* v. *Dorwin*, 21 Vt. 38 ; *Turrill* v. *Boynton*, 23 Vt. 142 ; *Smith* v. *Hyde*, 36 Vt. 303 ; *Berry* v. *Pullen*, 69 Me. 101 ; S. C., 31 Am. Rep. 248 ; *Armistead* v. *Ward*, 2 Pat. & H. (Va.) 504. See, also, *Camp* v. *Howell*, 37 Ga. 312 ; *Cox* v. *Mobile, etc., R. R. Co.*, 44 Ala. 611 ; *Stillwell* v. *Aaron*, 69 Mo. 539 ; S. C., 33 Am. Rep. 517.

It is true, there is a conflict of authority on the subject. Among the cases not in harmony with the foregoing, may be cited, *Cornwell* v. *Holly*, 5 Rich. S. C. 47 ; *Jenness* v. *Cutler*, 12 Kans. 500 ; *Hartman* v. *Danner*, 74 Pa. St. 36 ; *First National Bank, etc.*, v. *Lineberger*, 83 N. C. 454 ; S. C., 35 Am. Rep. 582 ; *Howell* v. *Sevier*, 1 Lea (Tenn.) 360. Several of these cases rest, to some extent, on the authority of *Vilas* v. *Jones*, 1 N. Y. 274, which is shown to be overruled in *Billington* v. *Wagoner, supra.*

If the contract were absolutely void, on account of the

usurious taint, we might be forced, possibly, to a different conclusion. But it is only voidable, and that not at the option of the lender. The right of rescission and recoupment is personal to the debtor, his heirs, representatives, or sureties. The creditor who has received the usury has no right to restore it, or credit it on the debt, and thereby release himself from his engagement to give time, and especially after the stipulated time has gone by, on the ground that his agreement was without sufficient consideration.

The judgment is affirmed, with costs.