ROBERT B. WILLIAMS ET AL., APPELLANTS, *v.* JOHN S. BIRCH AND OTHERS, RESPONDENTS.

*Bonâ fide Purchase for Value—Usury renders voidable only by Purchaser.*

In an action by Plaintiffs to recover either the goods or damages for their conversion, from parties, a part of whom obtained the possession by fraudulent representations, after the Plaintiffs have established the fraud, and their consequent right to recover against the party obtaining the goods, it is incumbent on a party Defendant claiming such goods as a *bonâ fide purchaser of the same for value*, to establish by proper evidence his bonâ fide character as such purchaser; and if in doing so it turns out by the evidence that the contract of purchase was tainted with usury, the Plaintiffs may not avail themselves of such evidence to rebut the bonâ fide character of the purchase.

*T. G. Shearman* for Appellants.

*L. R. Marsh* for Respondents.

DAVIES, CH.J. The Defendants, Birch, Nutting, and Nutting, fraudulently obtained from the Plaintiffs six cases of silks, and sold and transferred them to the Defendants Tilt, who sold four of them to the Defendant Newman.

The complaint as to the Defendants Tilt, Thorp, and Newman, averred "That the said firm of John S. Birch & Co. put the said silk in the hands of the Defendant, Thorp acting as the agent of the Defendant Tilt, but that said Thorp and Tilt, as the Plaintiffs are informed and believe, received the same knowing that it had been obtained under the circumstances above mentioned, and without paying any consideration therefor; that the Plaintiffs gave notice on the 12th day of June, 1857, to the said Thorp and the said Tilt, that the said silk had been obtained from them by fraud, and demanded the return to them of the same, but that they refused to deliver it up; that they still retain two bales thereof, and have transferred four bales thereof to the Defendant Newman, who now holds the same, and who, as the Plaintiffs are informed and believe, was also cognizant of the facts above stated, and paid no consideration for the above goods, and that the Plaintiffs have

given notice to the said Newman thereof, and have demanded the said goods from him, but he has refused to deliver up the same."

The Defendants Tilt and Thorp set up in their answer that said Tilt is a commission merchant, and that said Thorp is the agent and attorney of the said Tilt in the transaction of his, said Tilt's, business; that the said Tilt, in the transaction of his business, is in the habit of receiving goods and merchandise from his consignors, and that he is also in the habit of advancing money to said consignors of said goods, which advance money is to be paid to said Tilt whenever the said Tilt shall effect a sale of the said goods and merchandise; that, in the transaction of said business, the said Tilt and Thorp admit that said Tilt, as assignee, received from said Birch & Co. certain quantities of silk, upon which and for, and on account of which, said Tilt on the 27th of May, 1857, did pay and advance to said Birch & Co. the sum of $1,000, and on the 28th of said May the further sum of $2,800, and they deny that when they received the said silk they knew that the same had been obtained under any circumstances of fraud or false or fraudulent representations whatever; and they aver that said goods were received by them in good faith and as a fair business transaction.

The Defendant Newman denied that he received from the Defendants Tilt and Thorp, or either of them, the said silk without paying any consideration therefor, and he denies that he was cognizant of any facts as to any fraud or false or fraudulent representations alleged to have been made by the Defendants, Birch & Co.

The action came on for trial before a justice of the Superior Court of New York and a jury, and a verdict was rendered for the Plaintiff against the Defendants, Birch & Co., and for the Defendants, Tilt, Thorp, and Newman, against the Plaintiffs. It appeared upon the trial that two of the bales of silk had been sold to the Defendant Newman, but that he had paid nothing thereon, and that four of the bales were still in the possession of Tilt and Thorp at the time Plaintiffs demanded the same, and the

case went to the jury, as to the Defendant Newman, that he must stand or fall with the Defendants Tilt and Thorp.

It becomes important to consider what was the issue presented by the pleadings as against these Defendants. It is well stated in the opinion of Judge Woodruff, thus : " Laying out of view, for the purposes of the discussion, the admitted fact that Thorp was a mere agent, that the goods were consigned to Tilt, and the advances were made by Tilt, and assuming that Thorp and Tilt are in the same liability, if either are liable, the question raised is this, Did Thorp and Tilt receive the goods from Birch & Co., knowing that they had been procured by fraudulent representations and without paying any consideration therefor? They did receive the goods. There was not the slightest proof that either of them had any knowledge of the circumstances under which the goods were purchased by Birch & Co., or that Birch & Co. were not owners in good faith and guiltless of any fraud or unfairness. It only remained to inquire whether Thorp and Tilt paid any consideration for the silk. The charge in the complaint was that they did not. This charge was denied, and the proof showed, without any contradiction, that Tilt advanced $3,800 thereon, or more strictly $1,000, on a promise to consign, and $2,800 upon the consignment to him of the silk for sale."

The Court correctly held that upon the issue presented in the pleadings the Defendants, Thorp, Tilt, and Newman, were entitled to the verdict which the jury rendered in their favor.

But it appeared upon the trial that the Defendant Tilt had rendered account to Birch & Co. of the sales of said silks, from which it appeared that the moneys advanced and the transaction between the parties were usurious. Birch testified that these accounts from Tilt were in accordance with the contract between the parties. Upon this the counsel for the Plaintiff requested the Court to charge that a pledge or consignment upon a usurious advance is not a valid contract. The Court ruled that usury was not a question in the case, and declined so to charge, to which there was an exception. The Court did charge that, if Thorp and Tilt are in the position of bonâ fide purchasers of the silks from Birch & Co., they will be

entitled to retain them, notwithstanding the purchase by Birch & Co. from the Plaintiffs was procured through fraud. They are bonâ fide purchasers if they paid value for the property by making advances thereon, on the faith of Birch & Co.'s title, and without notice of the fraud. The Plaintiffs insist that the contract between the Defendants, Thorp and Tilt, and Birch & Co., by which the former advanced money on the silks in question, was not valid, because it appears by the account sales rendered by Tilt, and the evidence of Thorp, that Tilt was to receive a consideration for such advance, which amounted in law to usury. Conceding that there was usury in the transaction between Tilt and Birch & Co., it is not perceived how these Plaintiffs can take advantage of that fact to avoid the contract between Tilt and Birch & Co. The contract is good as between third persons, and can be only set aside at the instance of the party who has been the victim of the usurious transaction, his heirs, devisees, or personal representatives. They only can avoid a contract on account of usury. Usury cannot be set up by a stranger to the original transaction (Post *v.* the Bank of Utica, 7 Hill, 391; Rexford *v.* Widger, 2 Coms. 131; Bullard *v.* Raynor, 30 N. Y. 197). In the latter case the Plaintiff sued as assignee of E. F. Bullard, and the only item in controversy was the sum of $75, charged by the Defendant in account with the Plaintiff's assignor. The Court charged the jury that if the maker had stated the account including it, and thereby admitted the correctness of the charge, the Plaintiff, claiming as assignee of the maker, could not set up the defence of usury. Judge Mullin in the opinion of this Court says : " If E. F. B. were the party Plaintiff, I should hold him entitled to repudiate this settled account, and to resist the set-off of the note. But so far from manifesting any desire to take advantage of the usury, he has permitted the account into which this usurious item enters to become stated, and then assigns to the Plaintiff. The latter must take the claim, subject to the rights of the Defendants to rest upon the account as stated." In Billington *v.* Wagoner (33 N. Y. 31), it was held that the defence of usury can be set up only by the party bound by the original agreement to pay the sum borrowed, or by

the sureties, heirs, devisees, or personal representatives of such party. In that case the usurer sought to avoid the contract on the ground of its usurious character. In the opinion of the Court in that case it is said: "Although the statute uses the language that any usurious note, contract, &c., shall be void, yet it is not always so regarded, as it is in the power of the party who can avail himself of that defence to waive it." And it was added : "But this defence or objection to the contract, that it is void on account of usury, can only be alleged or set up by the party bound by the original contract to pay the sum borrowed, or his sureties, heirs, devisees, or personal representatives." The doctrine of these cases has been reaffirmed by this Court in the case of Chamberlain *v.* Dempsey, decided at the March Term of this Court in 1867. It is therefore the settled law of this State, that the only parties who can avoid the contract between Birch & Co. and Tilt, on the ground of its usurious character, are Birch & Co., or their sureties, heirs, devisees, or personal representatives. They can affirm and enforce it, and it is a valid and subsisting contract, so far as the rights and duties of all others are concerned. It was not competent for these Plaintiffs, therefore, to avoid this contract upon that ground ; and if the pleading had been so framed as that they could properly have given evidence of the usurious character of this contract or arrangements, it would have been unavailing as to them.

The judgment of the Superior Court of New York was correct and should be affirmed.

PARKER, J.—On the 26th of April, 1857, the firm of John S. Birch & Co., consisting of John S. Birch, Lucius B. Nutting, and William G. Nutting, by false and fraudulent representations as to their solvency, induced the Plaintiffs to sell and deliver to them six bales of silk on a credit of sixty days. On the 30th of April William G. Nutting retired from the firm, his interest therein having expired by limitation. On the 27th of May the remaining partners obtained from the Defendant Thorp, acting as the agent of Tilt, an advance of $1,000 upon a promise to consign the silk to Tilt for sale, upon commission, on receiving another advance of

$2,800; and on the 28th of May the silk was delivered, by the said two remaining partners, to Tilt and Thorp, and such additional $2,800 obtained. Tilt subsequently, and prior to June 12th, sold and delivered two of the bales to the Defendant Newman, who, neither at the time of the purchase, nor afterward, up to the time of the trial, paid the price or any part thereof. On the 21st of June the Plaintiffs gave notice to Tilt and Thorp that the silk had been fraudulently obtained from them by Birch & Co., and demanded its delivery to them, which Tilt and Thorp refused, having four of the bales still in their possession. No demand appears to have been made of Newman. The Plaintiffs, therefore, brought this suit in the Supreme Court of the city of New York, against all the members of the firm of Birch & Co., and Thorp, Tilt, and Newman, alleging in their complaint the application of Birch & Co. to the Plaintiffs to purchase from them six bales of silk on credit, and that upon such application they represented themselves to be solvent and in good circumstances, and possessed of large means; that in reliance upon such representations, and in consequence thereof, the Plaintiff sold the said firm six bales of silk, describing them, amounting in value, at the prices agreed upon, to $4,490.53; that they delivered the said silk to the Defendants, Birch & Co., on the 29th day of April, 1857, and the said firm promised to pay the sum above mentioned in sixty days after the said delivery; that the said representations were false and fraudulent, and intended to cheat and defraud the Plaintiff—the said firm having been, at the time of the purchase, largely insolvent, as they well knew, and that soon after they stopped payment and made an assignment; " that the said firm of John S. Birch & Co. put the said silk in the hands of the Defendant Thorp, acting as the agent of the Defendant Tilt, but that said Thorp and Tilt, as the Plaintiffs are informed and believe, received the same, knowing that it had been obtained under the circumstances above mentioned, and without paying any consideration therefor;" that the Plaintiffs, on the 12th of June, 1857, gave notice to Thorp and Tilt that the silk had been obtained from them by fraud, and demanded the return to them of the same, but that Thorp and Tilt refused to deliver

it up ; also alleging that Thorp and Tilt retained four of the bales, and had transferred two of them to Defendant Newman, who still held the same, and who was also cognizant of the facts above stated, and paid no consideration for the goods, and that the Plaintiffs had given notice to him of the fraud, and demanded of him the goods, but that he refused to deliver up the same. The complaint then demands judgment " that the Defendants may be compelled to deliver up to the Plaintiffs all the silk in their possession, or under their control, at the time of their receiving the notice afore-said, and to pay to the Plaintiffs the price of all the goods not so returned, together with the damages sustained by the Plaintiffs by reason of the said fraudulent acts of the Defendants."

Upon the trial before the Court and a jury, evidence was given upon the issue of fraud in the purchase by Birch & Co., and evidence showing the transfer to Tilt of the silk, to sell on commission, and his advances thereon, his sale of two bales thereof to Newman, and the notice of Tilt and Thorp, the demand of them and their refusal, as above stated. In the course of the proof showing the transfer to Tilt, evidence came out tending to show that Tilt, by arrangement between him and Birch & Co., charged them one per cent. per month, besides his regular charges and commissions, for the advances made by him upon the silk.

Upon the evidence affecting the right of the Plaintiffs to recover against Tilt, Thorp, and Newman, certain questions arose, all of which were disposed of by the Court, substantially in accordance with the request of the Plaintiff's counsel, excepting two, of which one is, that if Birch & Co. acquired no title as against the Plaintiffs, the other Defendants acquired none from Birch & Co., and no right to hold the goods as against the Plaintiffs, if they obtained them by a pledge or consignment under a contract for a usurious advance of money ; and the other, that after the dissolution of the firm of John S. Birch & Co., by the retirement of William G. Nutting, the remaining partners had not the power to pledge the property in order to raise the money for their own purposes. In these two particulars the requests to charge to the effect above stated were refused, and the Plaintiffs excepted.

A verdict was found against the Defendants, John S. Birch, Lucius B. Nutting, and William G. Nutting, for the value of the silk, with interest, and in favor of the other Defendants. The Court ordered the exceptions to be heard in the first instance at the General Term, and judgment to be in the mean time suspended. The General Term refused a new trial, and gave judgment in accordance with the verdict. From the judgment in favor of the Defendants, Tilt, Thorp, and Newman, the Plaintiffs appeal to this Court.

The ruling at the trial, that usury was not a question in the case, I cannot but think correct. This ruling was sustained by the General Term on the ground that no issue on the subject of usury was made by the pleadings; and the discussion upon the agreement in this Court as to whether this ruling was correct, has been confined almost entirely to the question whether it was necessary, in order to the raising of the question of usury, as it was sought to be raised by the Plaintiffs, that they should have set it up in their complaint. I cannot agree with the General Term in holding that this was necessary. The case cannot be regarded as one on the equity side of the Court, to set aside the sale to Birch & Co., and the transfer by them to these Defendants. The whole structure of the complaint, both in its statement of the cause of action and of the relief demanded, makes it a case for trial by jury under sections 253 and 254 of the Code, and it has been treated by the parties and the Court below as an action at law, triable by a jury, and not by the Court. If the Plaintiffs were attempting to reach the property in question through the setting aside of the contract between Birch & Co. and Tilt, on the ground of usury, and were in a condition to make such attempt, it would doubtless be necessary for them to show, by appropriate allegations in their complaint, how that contract was contaminated with usury. But if they are proceeding either to replevy the goods from Tilt, or recover against him for their conversion, the complaint may be very different. In such case, if it sets forth the facts showing the Plaintiffs' title to the goods, and that the Defendant has converted them to his own use, or wrong-

fully detains them from the Plaintiffs, it is sufficient (Tallman *v.* Turck, 26 Barb. 167, and cases there cited). Such is the condition of the case as it stands before us. The action, so far as these Defendants are concerned, is either to recover possession of the goods, or damages for their conversion. In either view, the complaint is sufficient to entitle the Plaintiffs to raise the question of usury, as they sought to raise it. The position taken by the Plaintiffs in the complaint is, that Birch & Co., having obtained goods from them by fraud, which have gone into the hands of these Defendants, under circumstances not entitling them to hold them as bonâ fide purchasers, they, the Plaintiffs, have the right to reclaim them, or recover their value from the Defendants. It was not necessary for the Plaintiffs to show how these Defendants obtained possession of them; that was matter of defence. If the Plaintiffs showed title in themselves, as they did primâ facie, and possession by Defendants and their refusal to deliver them up, on notice of the fraud and demand of possession, that was all they were required to show, and all that their complaint contains more may be rejected as surplusage. The Defendants were thereby put on showing that they were bonâ fide purchasers for value; and when, in the proofs of making out that character, it appeared, either from their own showing, or by rebutting evidence, that the contract under which their right to the goods accrued was usurious, it was entirely competent for the Plaintiffs to avail themselves of that circumstance as a bar to the Defendants' claim of being bonâ fide purchasers, provided it was of a nature to operate as such bar in their favor. It comes up as rebutting evidence, and therefore could not have been pleaded in the complaint. I apprehend it is not now, any more than formerly, necessary, in pleading to state matter which would come more properly from the other side, nor to " anticipate the answer of the adversary," which, according to Hale, Ch. J., is " like leaping before one comes to the stile." It is sufficient that each pleading should in itself contain a good primâ facie case, without reference to possible objections not yet urged (Stephenson on Pl. 350). But, as I have already said, I am unable to see how the question of usury between Birch & Co. and Tilt,

in the transfer of the goods, can affect the Plaintiffs' right to them. It is not denied that, if Tilt was a bonâ fide purchaser or consignee of the goods from Birch & Co., for value, without notice of the fraud, he is entitled to hold them as against the Plaintiffs. But it is insisted that, if the contract of transfer by Birch & Co. to him was infected with usury, that circumstance prevents his being a bonâ fide consignee, and entitles the Plaintiffs to recover against him. In support of this position the Plaintiffs' counsel cite Ransdell *v.* Morgan. (16 Wend. 574), and Kentgen *v.* Parks (2 Sandf. C. R. 60). These cases clearly hold the doctrine contended for by the Plaintiffs. In the first the learned judge who gave the opinion of the Court, rests his decision of this question on the statement that " there is a solecism on the face of the expression a bonâ fide purchaser on usury." I cannot but regard the remark of the learned judge as embodying a mistaken application of the bona fides required, which is with reference to the original and not the intermediable vendor. The purchaser must be without any complicity with the fraud commited on him. If the second purchaser is free from any priority with that fraud, by having no part in it, and no notice of it, either actual or constructive, he is a bonâ fide purchaser, without reference to his standing or to his immediate vendor. It is not good faith to him which is the subject of inquiry, but to the original owner. The existence of usury in the contract between the fraudulent purchaser and his vendee, who, without notice of the fraud, makes advances on the property, does not at all affect the relative rights and equities between them and the original vendor. The case of Kentgen *v.* Parks follows Ransdell *v.* Morgan as authority, without discussion. Aside from these two cases we are cited to none, and I do not find any which authorize such department from the reason and logic of the rule. If it should be said that, in addition to the requirements already adverted to, the purchase must be in the usual course of trade, I reply, that the consignment in the case at bar was in the *usual course of trade.* In the first place, the goods came to Tilt in their accustomed channel; Birch & Co. had the goods to sell. Tilt was a commission merchant, whose business was to receive

consignments of goods for sale, upon making advances upon them, a customary mode of dealing with such property. Again, he paid value for them at the time he took them. Said Spencer, Ch. J., in Coddington v. Ray (20 John. 651) : " I understand by the usual course of trade, not that the holder shall receive the bills or notes thus obtained [that is, pure or fraudulent payer] as securities for antecedent debts, but that he shall take them in his business and as payment for a debt contracted at the time." In this view I am strongly impressed with the belief that Tilt was to be regarded as a bonâ fide purchaser, notwithstanding the usury in the transfer to him, and that the cases of Ransdell v. Morgan and Kentgen v. Parks are wrong in principle, and not supported by authority. But however that may be, it is quite clear that, in another point of view, they are in conflict with a long course of decisions.

It has been long held, and should now be deemed settled in this State, that a usurious agreement cannot be assailed by a stranger—that is, one not a party to it, nor claiming under the party injuriously affected by it. The rule was stated by Bronson J. in Dix v. Van Wyck (2 Hill, 522), as follows : " A mere stranger, or one who has no legal interest in the question, shall not officiously intermeddle in the matter, and take advantage of a statute which was made for his benefit." A similar statement was made by the chancellor in Post v. Dart (8 Paige, 640). He said : "A mere stranger cannot insist upon the invalidity of a usurious security. . . . But the defence of usury may be set up by any one who claims under the mortgagor, and in privity with him." This is the extent to which the cases have carried the right ; and even the right of privies may be cut off by the waivor of the original party (Sands v. Church, 2 Seld. 347). The contract is not absolutely *void*, but only *voidable*, at the election of the borrower, or those who are privies in interest, or in contract with him. Hence, no other party can make the objection (2 Parsons on Notes and Bills, 407 ; Jackson v. Henry, 10 Johns. 195 ; Shufelt v. Shufelt, 9 Paige, 145 ; Post v. Bank of Utica, 7 Hill, 391–406 ; De Wolf v. Johnson, 10 Wheat. 367–393 ; Green v. Kemp, 13

Mass. 515 ; Bridge *v.* Hubbard, 15 Mass. 103 ; Morris *v.* Floyd, 5 Bart. 136 ; Bullard *v.* Raynor, 30 N. Y. 197 ; Billington *v.* Wagoner, 33 N. Y. 31). It is difficult to see how, under the rule above referred to, the Plaintiffs in the case at bar can be held to complain of usury in the contract between Birch & Co. and the Defendant Tilt. They are not claiming the property in question under Birch & Co., but by permanent title. Not having succeeded to the title of Birch & Co., Plaintiffs cannot take their place with reference to the contract, and claim the benefit of the statute made for them.

In regard to the proposition that, after the retirement of one member of the firm of Birch & Co., the other members of the firm had no power to pledge the property in order to raise money for their own purposes, which the Plaintiffs' counsel asked the Court to charge, these are sound answers: It is enough that there is no evidence in the case tending to show that the remaining members of the firm were seeking to obtain money for their own purposes ; on the contrary, the presumption is that the money they raised was in the due administration of the property of the firm, and for its benefit. On the grounds above stated, I am of the opinion that the judgment appealed from should be affirmed.

Affirmed.

JOEL TIFFANY,
State Reporter.