AUGUSTUS C. BROWN, AS ANCILLARY ADMINISTRATOR, ETC., OF MARY R. BURNSIDE, DECEASED, RESPONDENT, v. THE FARMERS' LOAN AND TRUST COMPANY, APPELLANT.

*Construing of a power to sell, etc., real and personal estate conferred by a testatrix — her intention governs — authority to pledge bonds to secure a loan and surrender them to the pledgee in payment of it — when such a power is general and beneficial and changes an estate for life into a fee in respect to creditors and purchasers — the phrase " creditors and purchasers" defined — no reference to the statutory provisions relating to powers is necessary in the instrument.*

In an action brought to recover the proceeds of fifteen bonds of $1,000 each, secured by a mortgage upon real estate in Illinois, it appeared that the bonds were owned by Mary R. Burnside at the time of her death on March 9, 1876, and that she left a last will and testament, by which she devised and bequeathed to her husband Ambrose E. Burnside, for and during the term of his natural life, all the rents, profits and income of all her estate, real, personal and mixed, and also appointed him executor thereof; and after his decease, after providing for the payment of certain legacies, the testatrix gave and devised all the rest, residue and remainder of her estate then remaining, in equal shares, to certain charities existing in the city of Providence, in the State of Rhode Island.

The testratrix further by her will gave to her husband during his natural life "full power and authority at his pleasure to change the investment of any personal property and estate, and also with power and authority, at his pleasure, to sell, transfer and convey any portion of my personal property and estate, execute the requisite conveyance and conveyances thereof, receive the proceeds of any such sale or sales and apply and appropriate the net proceeds thereof to and for his own use, benefit and behoof forever.

The will was executed and proved in the State of Rhode Island. Letters testamentary were issued to the husband, who thereafter caused the existing registration of the bonds to be canceled and restored them to their former condition of bonds payable to bearer, and thereafter, and in June, 1879, applied to the

defendant for a loan to him of the sum of $15,000 on the security of the fifteen bonds in controversy in this action. The loan was made and the bonds were delivered to the defendant, in whose possession they remained until they were paid out of the proceeds of the mortgaged property.

Upon an appeal from a judgment holding that the only authority given to the husband over the bonds was to sell, transfer or convey them, and that the disposition so made by him of the bonds was neither a sale, transfer or conveyance of them;

*Held,* that in construing the provisions of the will the intention of the donor of the power was the great governing principle.

That, in furtherance of the object in view the courts will vary the form of executing the power, as the case may require, to effect the purpose intended; either enlarge a limited to a general power or cut down a general power to a particular purpose.

That the leading and controlling intention of the testatrix was that her surviving husband should have the benefit of her estate, and the net proceeds thereof for his own use forever; that it could not have been her design that this general and extended right, conferred in this manner upon him, should be subordinated to the mere form in which she had previously indicated that the power might be exercised.

*Downey* v. *Bissell* (4 Federal Rep., 550); *Stuart* v. *Walker* (72 Me., 145); *Bloomer* v. *Waldron* (3 Hill, 361) followed; *Albany Insurance Company* v. *Bay* (4 Comst., 9); *Herring* v. *Barrow* (L. R., 13 Ch. Div., 144) distinguished.

After the loan itself had been made, the husband having paid interest upon the loan up to a certain time, informed the president of the defendant that it was impossible for him to pay the loan and that the company must take the bonds for the money owing to it. In answer to this suggestion the president of the company agreed to take the bonds in this manner, and they afterwards remained in its possession, without anything further being said or done between these parties, until after the decease of the husband in September, 1881.

*Held,* that a claim made by the plaintiff that by reason of the fact that no writing was executed at the time, and no formal delivery of the bonds took place, the agreement was void under the statute of frauds, could not be sustained, as the effect of such an agreement, followed by the continued possession of the property under it, was to pass the title.

*Allen* v. *Cowan* (23 N. Y., 502) followed.

That the power given by the will to the husband was a general and beneficial power, within the meaning of those terms as defined in sections 77 to 79 of 1 Revised Statutes, 732; and by the provisions contained in sections 81 to 85 thereof the estate previously given to him for life was changed into an absolute ownership of the property so far as the rights of purchasers or creditors might arise under it.

That persons dealing with him were entitled to act upon the fair effect and import to be attributed to the language itself, as the exponent of the intention of the person employing it; and the rights of the bank, in this case, were the same as though the will itself had been presented for the inspection of the defendant's

president at the time when the application was made for the loan upon the security of the bonds.

That it was not essential to the right of the defendant, to the protection of these statutory provisions, that direct reference should have been made to them in the instrument used in execution of the power.

That the phrase "creditors and purchasers," employed in said section 102, was sufficiently broad to include all persons dealing with the donee of the power in respect to the property.

APPEAL from a judgment entered in the office of the clerk of the city and county of New York on November 23, 1887, on the report of a referee in favor of the plaintiff.

*Herbert B. Turner* and *David McClure*, for the appellant.

*Stephen A. Walker*, for the respondent.

DANIELS, J. :

The action was brought to recover the proceeds of fifteen bonds of $1,000 each, payable with interest at the rate of eight per cent, which were made by Simeon B. Buckner, of the city of Chicago, and secured by a mortgage upon real estate situated there. The bonds in controversy were the property of Mary R. Burnside during her life. She died on the 9th of March, 1876, and left a last will and testament, by which she devised and bequeathed to her husband, Ambrose E. Burnside, for and during the term of his natural life, the free use and improvement, rents, profits and income of all her estate, real, personal and mixed. By her will she further declared and provided that he should, during his natural life, have "full power and authority, at his pleasure, to change the investment of any personal property and estate, and also with power and authority, at his pleasure, to sell, transfer and convey any portion of my personal property and estate, execute the requisite conveyance and conveyances thereof, receive the proceeds of any such sale or sales, and apply and appropriate the net proceeds thereof to and for his own use, benefit and behoof forever." She also appointed him executor under her will, and, after his decease, provided for the payment of certain legacies, and then gave and devised all the rest, residue and remainder of her estate, real, personal and mixed, then remaining, in equal shares, to certain charities existing in the city of Providence, in the State of Rhode Island. The will was executed

and proven in that State, and letters testamentary issued to the surviving husband of the testatrix.  At that time the bonds now in suit were registered in her name in the office of the defendant, and the mortgage given to secure them was executed and delivered to the defendant in trust for that object.  The bonds, upon their face, were made payable to bearer, and under the authority of the executor, Ambrose E. Burnside, their registration was canceled, and they were restored in that manner to their former condition of bonds payable to bearer.

After that, and in January, 1879, General Burnside applied to the defendant for a loan to him of the sum of $15,000 on the security of the fifteen bonds now in controversy.  The loan was made and the bonds were delivered to the defendant, in whose possession they remained until they were paid out of the proceeds of the mortgaged property.  This disposition of the bonds was assailed by the plaintiff, as ancillary administrator of the estate, appointed by the surrogate of the county of New York, on the ground that General Burnside had no power or authority to borrow money upon the bonds as he did from the defendant in this manner.  And this position was sustained at the trial, and by the judgment from which the appeal has been taken.  It was placed upon the ground that the only authority given him over the bonds, was to sell, transfer, or convey them, and that this disposition was neither a sale, transfer or a conveyance of these bonds.  The construction which was given by authorities at common law to a devise and bequest for life, although empowering the devisee and legatee to dispose of the property by sale, was that it was no more than a power of sale, without enlarging and extending the life estate, otherwise given and declared by the will.  In *Jackson* v. *Robins* (16 Johns., 538), the distinction was drawn between a devise of the property itself, with the addition of a power of sale, in which case the devisee would take the entire title, and a disposition of the same property for life, to which the devisee was given a power of disposal, for his or her own use and benefit.  In the latter class of cases it was held by this, as well as other authorities, that the power did not enlarge or extend the life estate, and was no more, in any event, than a mere power of disposition, no way affecting the title, unless it was exercised in strict conformity to the language of the will.  (*Terry* v. *Wiggins*, 2 Lans.,

272; 2 Perry on Trusts [2d ed.], § 768; *Switzer* v. *Wilvers*, 24 Kans., 384; *Henderson* v. *Blackburn*, 104 Ill., 227.) But in these cases there was drawn in question no more than a simple power of sale, while in *McCauley's Appeal* (93 Penn., 102); *Hoyt* v. *Jaques* (129 Mass., 286); *Downey* v. *Bissell* (4 Fed. Rep., 55); *Stokes* v. *Payne* (58 Miss., 614), the life tenant under the will was authorized to use, dispose of and consume the property, and still it was considered that a sale only, and not an hypothecation by way of pledge or security was within the authority conferred by the will. And this was also followed as to this will in *Rhode Island Hospital Trust Co.* v. *Commercial National Bank* in that State (14 R. I., 625.) But in *Downie* v. *Bissell* (*supra*), a clear intimation was given from which it is to be inferred that if it had been made to appear that the property had been in fact mortgaged to raise money for the use and enjoyment of the life tenant during her life, a different disposition of the cases might have taken place. And this view was followed in *Stuart* v. *Walker* (72 Maine, 145), where all that was directed by the decree was that the unexpended proceeds received by the life tenant should be surrendered or paid over under the authority of the action. And as much as that was conceded in the opinion on which the case of *Bloomer* v. *Waldron* (3 Hill, 361), was decided. For it was there said that, " there was nothing in the purposes of the will as connected with a sale, which required anything beyond a mere power to effectuate. The case is not, therefore, within the principle which from a necessity of carrying out consequences will sometimes imply a trust or an interest in the donee of the power proportioned to those consequences." (Id. 365.) And the case of the *Albany Insurance Company* v. *Bay* (4 Comst., 9), does not gainsay the accuracy of this intimation, for that involved no more than the right to mortgage under a general power of sale. (Id. 19.)

In the exercise of this authority it has been said: " The intention of the donor of the power is the great principle that governs in the construction of powers, and, in furtherance of the object in view, the courts will vary the form of executing the power; and, as the case may require either enlarge a limited to a general power, or cut down a general power to a particular purpose." (4 Kent [7th ed.], 362; [11th ed.], 381, 345.) And this case ought justly and rationally

to stand upon the support of this principle. For the leading and controlling intention of the testatrix was that her surviving husband should have the benefit of her estate and the net proceeds thereof for his own use forever. And it could not have been her design that this general and extended right conferred in this manner upon him should be subordinated to the mere form in which she had previously indicated that the power might be exercised. That would be to sacrifice the substance to form and limit the execution of her design to a literal compliance with what was indicated as no more than a mode in which the proceeds of the property might be obtained by him for his use, benefit and behoof forever.

The case of *Herring* v. *Barrow* (L. R., 13 Ch. Div., 144) has no application to this controversy. For it has not been contended, and cannot be, that the surviving husband, under this will, would have the power to dispose of the estate, or any part of it, by a testamentary devise or bequest; the sole and only point being whether this transaction, as it is shown to have taken place, was within the authority conferred upon the surviving husband. According to the strict letter, even though within the intent, it probably was not, although the contrary was held as to this particular power, by the Circuit Court of the United States for the Eastern District of Massachusetts, in the case of the *Rhode Island Hospital Company* v. *Travers*.

But further evidence was given concerning the business transacted between General Burnside and the defendant, which seems to carry this case beyond the reach even of this doubt. For after the loan itself had been made, and the bonds had been received by the defendant as security for its payment, a further agreement was made between the borrower and the defendant. He had then paid interest upon the loan, and informed Mr. Rolston, the president of the defendant, that it was impossible for him to pay the loan, and that the company must take the bonds for the money owing to it. And in answer to this offer and suggestion made by General Burnside, the president of the company agreed to take the bonds in this manner, and they afterwards remained in its possession without anything further being said or done between these parties until after the decease of General Burnside, which took place on the 13th of September, 1881. This transaction has been resisted on

behalf of the plaintiff as ineffectual, by reason of the circumstances that no writing was executed at the time by General Burnside, and no formal delivery of the bonds took place, and, consequently, that the agreement made in this manner was void under the statute of frauds. But in *Allen* v. *Cowan* (23 N. Y., 502), the effect of such an agreement, followed by the continued possession of the property under it, was considered to pass the title to it, even by way of gift, as that was in that instance the intention of the parties. The property which was the subject of the gift there, had been sold under a chattel mortgage and purchased by a nephew of the plaintiff. It consisted mainly, if not entirely of household goods, and after the sale, and without actual possession on his part, the purchaser pointed out the articles to the plaintiff, in whose house they were, and told her that he gave her that property and all the rest he had purchased that day. It seems to have been of a greater value than the price or sum of fifty dollars, and yet it was held by the court that this transaction vested the title to the disputed property in the donee. And if it did in that instance, the like effect would seem to be attributable to what took place in this case between General Burnside and the president of the defendant. And if it is to have that effect, then by the loan of the money and the hypothecation of the bonds for its security, and the agreement to surrender the property to the defendant because of the inability of General Burnside to provide for and take up the loan, a complete sale or transfer, within this language as it was used in the will, appears to have been made.

When the transaction came to be finally closed up the company realized an excess, over and above its debt and interest, amounting to the sum of $5,300, and that it paid over to the administrator of the estate of General Burnside. And this circumstance has been considered as having a controlling weight over what occurred and transpired at the time when the bonds were surrendered to the defendant. But there is no reason for doubting the correctness and truthfulness of the statement made by Mr. Rolston, as to what took place between himself and General Burnside. And as that amounted to a surrender, or a completion of the sale of the bonds, the company was under no obligation whatever to pay over the surplus. It had, on the contrary, the right to retain

it for its own use or benefit, or to dispose of it otherwise as. it might deem that to be just and proper. And paying it over to the administrator of this estate in no way changed the effect of what had previously taken place.

But if any doubt can remain as to the legality of these transactions, and the effect to be deduced from them by way of protecting the defendant from liability, it seems to be removed by the statute of this State declaratory of and defining the law concerning the creation and execution of powers. This statute was considered, in *Hutton* v. *Benkard* (92 N. Y., 295), to be applicable both to personal and real property; and that, under its provisions, the creation, construction and execution of powers concerning personal property are to be governed by the same rules, so far as they can be applied, which govern the creation, construction and execution of powers as to real estate. (Id., 305.) By the first section of the article containing these statutory provisions it was declared, in the most general language, that powers, as they previously existed by law, were abolished, and, so far as the authorities have already been examined in their application to a will of this description, they may, by this enactment, be considered to have been certainly limited and abridged. And the court has been left at liberty by it to carry into effect the design and intention of the testatrix without subordinating it to the mere form in which it was indicated that end might be accomplished. (2 R. S. [6th ed.], 1113, § 94.) But this statute has proceeded very much further in its definitions and provisions concerning the creation and effect of powers. And under its provisions the power given to General Burnside in this instance was a general power and within the language of section 98 (page 1114) of this article declaring that "a power is general when it authorizes the alienation in fee by means of a conveyance, will or charge * * * to any alienee whatever." And by section 100 of the same article it has been declared to be beneficial where no person other than the grantee has, by the terms of its creation, any interest in its execution. These sections are plain in their language and appear to be directly applicable to this case. And they are followed by section 102 declaring that, "when an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate for life or years, such estate shall be changed into a fee absolute in respect to the rights of

creditors and purchasers, but subject to any future estates limited thereon in case the power should not be executed, or the land should not be sold for the satisfaction of debts." This section plainly includes this case, for the will gave to the donee of the power absolute power of disposition for his own benefit, and in trust for no person or persons whatsover. And under that power, according to this enactment, the estate previously given for life was changed into the absolute ownership of the property, so far as the rights of purchasers or creditors might arise under it. And this construction of the section is further sustained by section 106 of the same article declaring that "every power of disposition shall be deemed absolute by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit." And the observance of nominal conditions in the disposition of the property has been dispensed with by section 141 (page 1117) of the article declaring that "when the conditions annexed to a power are merely nominal and evince no intention of actual benefit to the party to whom, or in whose favor, they are to be performed, they may be wholly disregarded in the execution of the power."

By the force and effect of these sections, which are applicable to this case, for the transaction affected by it wholly arose and occurred in this State, General Burnside was clothed with the absolute power of disposing of these bonds, so far as the rights of creditors or purchasers might intervene. In dealing with him they were entitled to the full benefit and effect of the directions contained in the will of the testatrix and construed in this manner. The rights were the same as though the will itself had been presented for the inspection of the defendant's president at the time when the application was made for the loan upon the security of the bonds; and one object of the statute was to enable persons dealing under the authority of a testamentary disposition of this description to act upon the fair effect and import to be attributed to the language itself, as the exponent of the intention of the person employing it. And the conclusion would be justified, on the perusal of such a document, that the person entitled to the proceeds of the property for his own benefit, use and behoof forever, was authorized to deal with it as its absolute owner, and, as such, to hyphothecate it for the payment of a debt contracted in his behalf and for his benefit and use. This

statute has given and was intended to secure to purchasers or creditors, under such an instrument, this degree of protection, and to abolish or materially abridge in their favor the distinction created by the preceding authorities between a general devise or bequest, with a superadded power of sale; and the creation of a life estate, with the addition of the power of absolute disposition for the benefit and advantage of the donee of the power. That this was designed to be the effect of the law is disclosed by the comments of the revisers (3 R. S. [2d ed.] 589), where it was said by them, in their report to the legislature, that, "in reason and good sense, there is no distinction between the absolute power of disposition and the absolute ownership; and to make such a distinction, to the injury of creditors, may be very consistent with technical rules, but is a flagrant breach of the plainest maxims of equity and justice. There is a moral obligation on every man to apply his property to the payment of his debts, and the law becomes an engine of fraud when it permits this obligation to be evaded by a verbal distinction. It is an affront to common sense to say that a man has no property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure. We apprehend the legislature will have no difficulty in declaring that, so far as creditors and purchasers are concerned, the power of disposition shall be deemed equivalent to the actual ownership." So far as the property may not be disposed of in the execution of the power, future estates limited on a life estate have been maintained and preserved by section 102 of the article referred to; but this limitation has been restricted to so much only as may remain unexhausted by the execution of the power.

It is not essential to the right of the defendant to the protection of these statutory provisions, that direct reference should have been made to them in any instrument to execute the power. For as long as the donee was restricted in his right of disposition for his own use and benefit to the power, it is to be presumed that in the transaction the power itself was employed as the source of the authority, for without it the donee would be incapable of making the disposition of the property purposed to be, and in fact made by him.

The phrase "creditors and purchasers," employed in the enactment of section 102 of the article, is sufficiently broad to include

all persons dealing with the donee of the power in the property of the estate for his use and benefit. It is certainly broad enough to include the case presented by this appeal, for by what took place the defendant did become a creditor as well as a purchaser of the bonds, even though it acquired no more than a defeasible interest. To that extent it was brought within the significance of these terms as they have been employed in the statute, although that degree of significance might not be accorded to them by the preceding authorities, which it was in part the object of this statute to change and abridge. Under the statutes of the State, where the rights of purchasers have been protected, persons dealing with property by way of security mortgage or pledge, have been considered to be within the protection of the law. (*Hall* v. *Arnold*, 15 Barb., 599; *Reynolds* v. *Park*, 5 Lans., 149; *Stone* v. *Bartlett*, 46 Me., 438; *Williams* v. *Tilt*, 36 N. Y., 319.)

There would clearly be no justice in holding, as General Burnside had the authority under the will to receive the proceeds of the sale or sales of any part of the property of the testatrix and apply and appropriate them to and for his own use, benefit and behoof forever, that the defendant should be liable to pay over to the plaintiff as, ancillary administrator of this estate, the moneys it had previously paid to and which had been used by the donee of this power under this authority. It was, on the other hand, the intention of the testatrix that he should have and enjoy such proceeds to his own use, and to that extent, certainly, the defendant was entitled to protection even under the cases already referred to of *Stuart* v. *Walker, Downey* v. *Bissell, Bloomer* v. *Waldron* (*supra*). The right of the defendant to protection as a *bona fide* holder of these bonds as negotiable instruments need not be considered. If the case should be disposed of on that ground it probably could not result in protection to the defendant. For it had become aware of the fact by the registration of the bonds, that they were the property of the testatrix, and continued to be so until the period of her own decease. And the subsequent dealings of the defendant in these securities would be affected by the continued application of this knowledge. (*Loring* v. *Brodie*, 134 Mass., 453.)

But on the other legal grounds, which have been fully considered,

the judgment appears to be erroneous, and it should be reversed and a new trial ordered, with costs to abide the event.

Brady and Bartlett, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.