THORER & HOLLANDER, INC., Respondent, *v.* MORRIS FUCHS, Appellant, Impleaded with IRVING TRUST COMPANY, as Trustee in Bankruptcy of ABRAHAM MORGENSTERN and Others, a Copartnership Doing Business as A. MORGENSTERN & BRO., and Others, Defendants.

First Department, June 8, 1934.

*Francis J. Generi* of counsel [*Alexander A. Falk,* attorney], for the appellant.

*Max Edelman* of counsel [*Stephen Brooks-Rosenthal,* attorney], for the respondent.

MERRELL, J. In its complaint the plaintiff alleges that on or about April 21, 1931, a certain copartnership, known as A. Morgenstern & Bro., purchased certain Persian skins from a corporation known as Thorer & Hollander, Inc., on a credit of four months. Under instructions from the purchaser of said furs the said goods

were shipped by the plaintiff, respondent, to a concern known as A. Hollander & Son for dyeing. Two days later, on April 23, 1931, the purchasers of said furs, the firm of A. Morganstern & Bro., representing themselves as the owners thereof, applied to the defendant, appellant, for a loan of $4,500 and offered to transfer the furs to the said defendant, appellant, by way of pledge to secure the payment of said loan. Relying upon said statements, the defendant, appellant, on the same day, loaned to the said firm of A. Morgenstern & Bro. the said sum of $4,500, and received a document transferring said furs to the defendant, appellant. The defendant, appellant, thereafter notified the dyers, A. Hollander & Son, of the transfer of said furs to him, and said dyers agreed to hold said skins for the defendant, appellant. Subsequently, and on or about May 10, 1931, the firm of A. Morgenstern & Bro. was petitioned into involuntary bankruptcy in the United States District Court for the Southern District of New York by the creditors of said firm. Immediately upon receiving notice of the bankruptcy of said firm, the plaintiff brought action in replevin and issued a requisition to the sheriff of the county of Orange to replevy said furs. The sheriff seized the furs from A. Hollander & Son. Plaintiff, in its complaint, alleged that the furs were purchased by A. Morgenstern & Bro. from it upon the false and fraudulent representation that the purchasers were solvent. Upon being apprised of the present action in replevin brought by the plaintiff, the defendant, appellant, applied for and was joined as a party defendant, the plaintiff herein being ordered to serve a complaint upon said defendant, appellant. Upon the complaint being received in the replevin action by the defendant, appellant, the latter answered and set up a counterclaim alleging that at the time the furs were seized by the plaintiff they had already been assigned and pledged to the defendant, appellant, by the firm of A. Morgenstern & Bro. to secure the repayment of the $4,500 loan above mentioned, the defendant, appellant, alleging that he was a *bona fide* purchaser thereof, and, therefore, entitled to the furs. The plaintiff replied to the answer and counterclaim interposed by defendant and in an amended reply denied the allegations contained in the answer and counterclaim, and set up, by way of affirmative defense, allegations to the effect that the loan made by the defendant, appellant, to A. Morgenstern & Bro. was usurious. Thereupon the defendant, appellant, moved the Supreme Court for an order to strike from the amended reply the said affirmative defense, designated therein as paragraphs " fourth " and " fifth," on the ground that said affirmative defense was not available to the plaintiff, was insufficient in law, and was inconsistent with the complaint. By the order

appealed from the court denied the motion of the defendant, appellant.

We are of the opinion that the alleged defense of usury set forth in the fourth and fifth paragraphs of the plaintiff's reply is insufficient and, as between the plaintiff and the defendant, appellant, the defense of usury is not available to the plaintiff.

The present action is in replevin. All that is required of the plaintiff to make out a *prima facie* case is to show that it is entitled to the immediate possession of the goods in question, and that the defendant is unlawfully withholding them from the plaintiff or has unlawfully converted them to his own use. Mere ownership of the goods replevied is insufficient. The plaintiff must show, in addition, either the conversion of the goods or a withholding thereof and a refusal to deliver by the defendant. (*Sager* v. *Blain*, 44 N. Y. 445.) The plaintiff, having established a *prima facie* case, the burden then falls upon the defendant either to show that he is rightfully entitled to the possession of the goods or that he is a *bona fide* purchaser thereof for value. (*Pierce* v. *Van Dyke*, 6 Hill, 613; *Williams* v. *Tilt*, 36 N. Y. 319.) Once the plaintiff, respondent, has made out a *prima facie* case, the defendant, appellant, in order to succeed, must show that he was rightfully entitled to the possession of the goods or that he was a *bona fide* purchaser for value without notice of any infirmity in the title of the pledgors of said goods. It follows, therefore, that the burden is upon the defendant, appellant, to show when he became a *bona fide* purchaser for value. The question attempted to be presented by the fourth and fifth paragraphs of the plaintiff's reply was whether or not the contract whereby the defendant, appellant, became a purchaser of the goods for value was or was not tainted with usury, and has nothing to do with the *bona fides* required herein. The leading case upon the subject as to who may avail himself of the defense of usury was thoroughly discussed by Judge PARKER in *Williams* v. *Tilt* (36 N. Y. 319). At page 323 of that case, Judge PARKER said: "The position taken by the plaintiffs in the complaint is, that Birch & Co., having obtained goods from them by fraud, which have gone into the hands of these defendants, under circumstances not entitling them to hold them as *bona fide* purchasers, they, the plaintiffs, have the right to reclaim them, or recover their value from the defendants. It was not necessary for the plaintiffs to show how these defendants obtained possession of them — that was matter of defense. If the plaintiffs showed title in themselves, as they did *prima facie*, and possession by defendants, and their refusal to deliver them up, on notice of the fraud and demand of possession, that was all they were required to show; and all that

their complaint contains more, may be rejected as surplusage. The defendants were thereby put upon showing that they were *bona fide* purchasers for value; and when, in the process of making out that character, it appeared, either from their own showing, or by rebutting evidence, that the contract under which their right to the goods accrued was usurious, it was entirely competent for the plaintiffs to avail themselves of that circumstance as a bar to the defendants' claim of being *bona fide* purchasers, provided it was of a nature to operate as such bar in their favor."

Further discussing the question as to whether one not in privity with the usury or fraud sought to vitiate the contract was fully considered by Judge PARKER in the same case at page 324: " *But, as I have already said, I am unable to see how the question of usury between Birch & Co. and Tilt, in the transfer of the goods, can affect the plaintiff's right to them.*

" * * * *I cannot but regard the remark of the learned judge* [*Ramsdell* v. *Morgan*, 16 Wend. 574] *as embodying a mistaken application of the bona fides required, which is with reference to the original and not the intermediate vendor. The purchase must be without any complicity with the fraud committed on him. If the second purchaser is free from any privity with that fraud, by having no part in it, and no notice of it, either actual or constructive, he is a bona fide purchaser, without reference to his standing as to his immediate vendor. It is not good faith to him, which is the subject of inquiry, but to the original owner. The existence of usury in the contract between the fraudulent purchaser and his vendee, who, without notice of the fraud, makes advances on the property, does not at all affect the relative rights and equities between him and the original vendor.*" (Italics are the writer's.)

The law thus enunciated by the Court of Appeals in *Williams* v. *Tilt* (*supra*) is of ancient origin. The Court of Appeals in *Williams* v. *Tilt* further said, at pages 325 and 326: " In this view I am strongly impressed with the belief that Tilt was to be regarded as a *bona fide* purchaser, notwithstanding the usury in the transfer to him, and that the cases of *Ramsdell* v. *Morgan* [*supra*] and *Keutgen* v. *Parks* [2 Sandf. 60] are wrong in principle and not supported by authority. But however that may be, it is quite clear that, in another point of view, they are in conflict with a long course of decisions.

" *It has been long held and should now be deemed settled in this State, that a usurious agreement cannot be assailed by a stranger, that is, one not a party to it,* nor claiming under the party injuriously affected by it. The rule was stated by BRONSON, J., in *Dix* v. *Van Wyck* (2 Hill, 522), as follows: 'A mere stranger, or one who

has no legal interest in the question, shall not officiously intermeddle in the matter, and take advantage of a statute which was not made for his benefit.' A similar statement was made by the Chancellor in *Post* v. *Dart* (8 Paige, 640). He said, 'A mere stranger cannot insist upon the invalidity of a usurious security. * * * But the defense of usury may be set up by any one who claims under the mortgagor, and in privity with him.' This is the extent to which the cases have carried the right, and even the right of privies may be cut off by the waiver of the original party. (*Sands* v. *Church*, 6 N. Y. 347.) The contract is not absolutely *void* but only *voidable*, at the election of the borrower, or those who are privies in interest or in contract with him. Hence, no other party can make the objection. (2 Parsons on Notes and Bills, 407; *Jackson* v. *Henry*, 10 Johns. 185; *Shufelt* v. *Shufelt*, 9 Paige, 145; *Post* v. *Bank of Utica*, 7 Hill, 391, 406; *DeWolf* v. *Johnson*, 10 Wheat. 367, 393; *Green* v. *Kemp*, 13 Mass. 515; *Bridge* v. *Hubbard*, 15 id. 103; *Morris* v. *Floyd*, 5 Barb. 136; *Bullard* v. *Raynor*, 30 N. Y. 197; *Billington* v. *Wagoner*, 33 id. 31.) *It is difficult to see how, under the rule above referred to, the plaintiffs in the case at bar can be heard to complain of usury in the contract between Birch & Co. and defendant Tilt. They are not claiming the property in question under Birch & Co., but by paramount title. Not having succeeded to the title of Birch & Co., the plaintiffs cannot take their place with reference to the contract and claim the benefit of a statute not made for them.*" (Italics are the writer's.)

In our opinion the decision of the Court of Appeals in the case of *Williams* v. *Tilt* and the reasons stated therein are decisive of the case at bar. So far as we know, the decision of the Court of Appeals in that case has never been questioned or overruled.

If the plaintiff will be unable to offer proof in substantiation of the allegations contained in the fourth and fifth paragraphs of its reply, it is, of course, idle to allow said paragraphs to remain in the reply. (*Noval* v. *Haug*, 48 Misc. 198.) We are, therefore, of the opinion that the court erroneously denied the motion of the defendant, appellant, to strike out the allegations contained in the fourth and fifth paragraphs of the plaintiff's reply, and that the order appealed from should be reversed, with twenty dollars costs and disbursements, and defendant, appellant's motion granted, with ten dollars costs.

FINCH, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.