CELESTINA CARABALLO, ETC., Appellant, *v.* REGISTRAR OF
PROPERTY OF GUAYAMA, Respondent.

No. 933. Submitted January 14, 1935.—Decided July 24, 1935.

*C. Domínguez Rubio* for appellant.   The registrar appeared by brief.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

In August 1930, one Carrillo and his wife executed a mortgage as security for a loan with interest at 12 per cent.   The loan and mortgage matured August 1, 1933.   An act to amend section 1 of ''An Act to fix a legal rate of interest on all obligations,'' approved March 1, 1902, as amended by an act of March 12, 1903, and for other purposes, became effective August 17, 1933.   First Special Session Laws of that year, p. 26.   A proviso attached to section 1, as amended, says ''. . . That no rate of interest shall be fixed by special agreement in excess of nine (9) dollars a year on each one hundred (100) dollars or upon its equivalent in value. when the capital, the object of the loan or of the agree-

ment does not exceed three thousand (3,000) dollars, and eight (8) dollars a year on each one hundred (100) dollars when the capital passes said sum." In June 1934, the term of the obligation was extended for a period of two years from August 1, 1933, as far as an unpaid balance of $700 was concerned and all other provisions of the original contract were by express agreement continued in force. A registrar of property recorded this instrument as to the partial cancellation of the mortgage and as to the extension thereof but refused to record the agreement for a continuation of the provision contained in the original contract concerning the payment of interest at the rate of 12 per cent on the ground that this agreement was in violation of the amendment of 1933.

The original contract contained no provision concerning the rate of interest in the event of nonpayment at maturity. In the absence of any such provision the mortgagees, if they had brought an action on the original contract, could not have recovered interest at more than 6 per cent after the date of maturity and default. See section 1061 of the Civil Code, 1930 ed.; *Goico* v. *Rodríguez et al.*, 28 P.R.R. 492; *Cook* v. *Fowler*, 14 E. R. C. 546 and other cases cited in 33 C. J. 226, section 111, and decision of the Supreme Court of Spain, June 7, 1922, 156 *Jur. Civ.* 464. Any claim to interest at a higher rate after maturity and default must rest entirely upon the new agreement. The fact that this new agreement did not amount to a novation of the original contract is no answer to the objection that the new agreement was in the teeth of section one of the law. The parties to the original contract could have entered into the new agreement at any time before the law of 1933 went into effect. After the law went into effect they could not make a valid agreement for the payment of interest at 12 per cent. To hold that the law is applicable to such an agreement made some ten months after the law took effect is not to construe the law so as to give it a retroactive effect.

■ Appellant assumes that the instrument executed in June 1934, merely ratified a previous agreement entered into prior to August 17, 1933, but we find nothing in the record to support this theory. Another contention is that the prohibition of contracts for the payment of interest at more than 8 or 9 per cent applies, like the first part of section one of the law, to oral contracts only. The first part of section one provides: ''That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of six (6) dollars annually, on each one hundred (100) dollars or upon its equivalent in value, and at the same rate for a greater or less sum or for a longer or shorter period.'' The ''special agreement'' referred to in the proviso, *supra*, is an agreement in writing, not an oral agreement. The construction suggested by appellant would make of the section as a whole a direct contradiction in terms. A perusal of sections 3, 4, and 5 of the law (Comp. Stat. 1911, sections 4174, 4175, and 4176) should suffice to remove any doubt as to the question here sought to be raised.

■ In the course of our own discussion of the case, since the foregoing was written and submitted in the form of a memorandum, a question has been raised as to the jurisdiction of the registrar to consider whether or not the parties had the right to make the agreement for an extension of the term of the mortgage at the rate of 12 per cent. It is said: that a person who has no interest in the transaction cannot set up the defense of usury; that a trial court would not consider the question of usury unless raised by the borrower or by someone in privity with him or having an interest in the defense; that the principles are summed up in 66 C.J. 314, par. 314; that section 315 of the article on usury in the same volume discusses the rights of privies and successors in title; that section 316 treats the matter of whether a transaction is void or voidable; and that ''Essentially the

note of the registrar is analogous to the notes of the registrars in the case of *Compañía Azucarera del Toa* v. *Registrar*, 19 P.R.R. 724, and others."

In *Compañía Azucarera de la Carolina* v. *Registrar*, 19 P.R.R. 143, a registrar of property had refused to record the conveyance of certain land to a corporation because it appeared from other entries in the registry that the corporation already owned more than five hundred acres. His theory was that the purchaser had not the legal capacity to acquire the land in question. This court held that the law invoked by the registrar did not forbid such an acquisition. Whatever room there may be for a difference of opinion about the effect of the statute now before us upon usurious contracts, it cannot be seriously contended that such contracts are not expressly forbidden and outlawed by that statute.

We need not quote from the opinion in the *Compañía Azucarera de la Carolina* case in order to accentuate the difference between a deed of conveyance to a corporation which already owns more than 500 acres of land and an usurious contract. In the one case the contract is perfectly valid between the parties and as binding upon the corporation as it is upon the vendor. It is not even vitiated by any curable defect which need be noted in the registry in order to protect prospective purchasers or mortgagees or other persons who may thereafter become interested in the land. In the other case the borrower is under no legal obligation to pay any interest whatever either at the specified or at the legal rate. The lender cannot recover from the borrower in any court of justice any part of such interest nor more than three-fourths of his principal. An assignee of the lender, as far as the liability of the borrower is concerned, is in no better position than the lender himself. Even if the borrower has paid the interest on an usurious contract he may, within one year from the date of such payment, recover the excess. A mortgagee who seeks to record his unenforceable contract for interest in open violation of the law,

which places a limit upon the rate permitted to be fixed by the parties to any agreement, is in a very different position from that of a corporation which seeks to record a deed of conveyance whereby it has acquired land in excess of the 500 acres specified in the Organic Act.

In the instant case the facts are uncontroverted. The registrar has not tried nor attempted "to try matters that involve disputed questions of fact".

In *La Compañía Azucarera del Toa* v. *Registrar*, 19 P.R.R. 724, this court said:

"In this administrative appeal the only facts that distinguished it from case No. 123, *La Compañía Azucarera de la Carolina* v. *The Registrar of Property of San Juan, Section 1, ante*, p. 143, are that here it appears that the appellant is asking the registrar to record at one time a transfer to it of some 700 acres. But one of the principal reasons we had in the said case for reversing the note of the registrar was that until the Attorney General acted or, in other words, the Government, an agricultural company had a good title against all the world. This was made apparent not only by our own words, but by citations from the Supreme Court of the United States. Hence, the fact that the corporation appears to be acquiring more than 500 acres makes no difference.

"For this reason, and others assigned in the opinion in said case No. 123, *La Compañía Azucarera de la Carolina* v. *The Registrar of San Juan*, the note must be reversed."

In *La Compañía Azucarera del Toa* case, as in *La Compañía Azucarera de la Carolina* case, the law invoked by the registrar did not affect directly the conveyance in question. It was, as between the parties thereto, like the conveyance in *La Compañía Azucarera de la Carolina* case, neither void nor voidable. Any proceeding that an Attorney General might institute could not alter that fact. In the instant case, the law operates directly upon the contract by forbidding the execution thereof and by further providing that it shall not be made effective in any court, ". . . . and the court must provide, furthermore, in the judgment directing the debtor to pay the principal, that the creditor shall recover only

seventy-five per cent of said principal and that the remaining twenty-five per cent shall be awarded to and recovered by The People of Puerto Rico, who may obtain a writ of execution, in the same manner as the plaintiff. . . ." No action or proceeding need be instituted by the Attorney General nor by any one else in order to enforce the forfeiture. Even otherwise the fact that the making of the contract now before us is expressly forbidden by law and the further fact that by express provision of law such a contract may not be made effective in any court should suffice to distinguish the instant case from the other two.

If there be any analogy between the instant case and the other two, it must be found in the fact that in the case of a corporation which owns more than 500 acres of land, the Attorney General alone can institute a proceeding against the corporation while in the case of an usurious contract only the borrower or his privies can interpose the defense of usury. The analogy, if any, is not very apparent; or, if apparent, is more apparent than real. The registrar is not in the position of a litigant who seeks shelter behind the usurious character of a contract to which he is a stranger. He is a public officer charged by law with the duty and responsibility of passing upon the validity of contracts presented for record in the registry of property. Where the facts appear on the face of the instrument, his power to pass upon its eligibility to record is quite as clear as is the power of the Attorney General to institute any action or proceeding expressly authorized by law or as is the power and duty of any court to render judgment in such action or proceeding. The result of his decision is that the document is or is not admitted to record.

If the document has a curable defect, it is recorded and the defect noted. If the defect is incurable the document is not recorded. Curable defects and incurable defects are defined and distinguished in article 65 of the Mortgage Law and in article 110 of the Regulations. The difference between

a contract which is vitiated by a curable defect and one. which is vitiated by an incurable defect may or may not be identical with the difference between voidable and void contracts. In any event no question decided by the registrar is *res judicata*. Neither the opinion of the registrar as to the questions of law involved nor the opinion of this court in disposing of an administrative appeal is binding upon this court or upon any other court in disposing of any subsequent action or judicial proceeding.

Hence, we cannot concur in the view that: "Essentially the note of the registrar is analogous to the notes of the registrars in the cases of *La Compañía Azucarera del Toa* v. *Registrar*, 19 P.R.R. 724, and others," nor in the view "that the registrar has no jurisdiction to consider whether or not the parties in this case had the right to make an extension of the mortgage" at the rate of 12 per cent per annum.

■■ The counter memorandum does not contain any discussion of the question as to whether the usurious contract is void or merely voidable, nor any comment upon section 316 of the article on usury in 66 C.J. to which our attention is invited. We shall therefore refer but briefly to a few only of the more important cases cited in connection with the opening statement of that section, to wit, that:

"While there is apparently some authority to the contrary, even the sweeping declaration of the statute that contracts, instruments, or other transactions, or titles, tainted with usury are void is usually construed by the courts to mean that they are voidable at the option of the borrower, or his privies or those claiming under him. . . ."

In *Williams* v. *Tilt*, 36 N.Y. 319, 326 (Book VIII, N.Y. Court of Appeals Rep. 112), we find the following *dictum* or *obiter dictum:*

"The contract is not absolutely *void* but only *voidable,* at the election of the borrower, or those who are private in interest or in contract with him. Hence no other party can make the objection. 2 Pars. Notes and Bills, 407; *Jackson* v. *Henry*, 10 Johns. 185, 6

Am. Dec. 328; *Shufelt* v. *Shufelt,* 9 Paige 145, 37 Am. Dec. 381; *Post* v. *Bank* of *Utica,* 7 Hill 397, 406; *De Wolf* v. *Johnson,* 10 Wheat. 367, 393; *Green* v. *Kemp,* 13 Mass. 515, 7 Am. Dec. 169; *Bridge* v. *Hubbard,* 15 Mass. 103; 8 Am. Dec. 86; *Morris* v. *Floyd,* 5 Barb. 136; *Bullard* v. *Raynor,* 30 N. Y. 197; *Billington* v. *Wagoner,* 33 id. 31.''

From the opinion in *Shufelt* v. *Shufelt,* 37 Am. Dec. 381, 384, we take this extract: (Italics ours.)

''In the ordinary case of the giving of an usurious mortgage, by the owner of the mortgaged premises, the statute having declared the usurious security void, the owner of the premises of course has the right to sell his property, or to mortgage the same, as though such void mortgage had never existed. And the purchaser, in such a case, necessarily acquires all the rights of his vendor to question the validity of the usurious security. For if the original mortgagor had not that right, the premises would, to a certain extent, be rendered inalienable in his hands; notwithstanding the incumbrance thereon was *absolutely void as to him.* He may, however, if he thinks proper to do so, elect to affirm the usurious mortgage, by selling his property subject to the payment or to the lien of such mortgage. And the purchaser, in that case, takes the equity of redemption merely, and cannot question the validity of the prior mortgage. on the ground of usury: *Green* v. *Kemp,* 13 Mass. 515, (7 Am. Dec. 169) ; *Bridge* v. *Hubbard,* 15 Id. 103, (8 Am. Dec. 86). But in the case of a judgment, like the present, which is a valid and subsisting debt against the defendant, and a lien upon his real estate, at least until he thinks proper to institute some legal proceedings to set aside such judgment, there is a manifest impropriety in permitting every voluntary purchaser, or mortgagee, of any portion of the property upon which such judgment is a lien, to file a bill in his own name to impeach the consideration of that judgment. . . .''

In *Green* v. *Kemp,* 7 Am. Dec. 169, 170, the Massachusetts court said:

''Although by the statute of 1783, c. 55, sec. 1, all mortgages on usurious considerations are declared to be utterly void, yet it never could have been intended that a stranger might enter on the mortgage or commit a trespass on the land and justify himself under the statute, when all parties interested in the title should be disposed

to acquiesce in the contract. The statute must have a reasonable construction, and in conformity to its general object, which was to protect debtors from the enforcement of unconscionable demands. A mortgage on an usurious consideration is therefore void only as against the mortgagor and those who may lawfully hold the estate under him: *Carter* v. *Claycole,* Bac. Abr. Title, Usury, E.; citing 307, pl. 428; Bull N. P. 224; *Bearce* v. *Barstow,* 9 Mass. 48 (6 Am. Dec. 25.)''

As pointed out by the court in *Morris* v. *Floyd,* 5 Barb. 130, after an extended review of the authorities prior to 1849, the principle upon which the defense of usury is denied to one who has purchased property subject to an usurious mortgage ''is founded upon the supposition that in the purchase an allowance was made out of the value, or price agreed upon for the premises, with which to redeem the property purchased, from the incumbrance, and that he ought not, under such circumstances, to avail himself of a statute not intended for his benefit.''

In *Billington* v. *Wagoner,* 33 N.Y. 31 (Book VII, N.Y. Court of Appeals Reports, 404), wherein plaintiff sought to recover on a promissory note:

''. . . . It appeared upon the trial, that after the note became due, about December 1, 1857, it was agreed between the plaintiff and James Wagoner, the principal, in consideration that he, Wagoner, would deliver to the plaintiff a certain fat hog of the value of $11.25, and would release the plaintiff from the payment of two bushels of potatoes, theretofore sold and delivered by the defendant to him, the value of which is not stated, that the plaintiff would wait for and postpone the payment of said note until the fall of the year 1858. This action was commenced in April, 1858. The counsel for the plaintiff asked the court to charge the jury, that if they should find that the agreement set forth in the answer had been proved, and that such an agreement had in fact been made between the parties, yet such an agreement would be usurious and void, and did not constitute a valid defense to the action, but that the plaintiff would, notwithstanding, be entitled to a verdict for the amount due on the note set forth in the complaint. The judge declined so to charge the jury, and the counsel for the plaintiff then and there excepted.''

The gist of the decision on appeal sufficiently appears from the headnotes. It follows:

"The defense of usuary can be set up only by the original borrower, or his sureties, heirs, devisees or personal representatives."

These and other cases cited in *Williams* v. *Tilt, supra,* fail to establish the doctrine laid down as a premise of the *dictum,* namely that: "The contract is not absolutely *void* but only *voidable,* at the election of the borrower, or those who are privies in interest or in contract with him."

The *dictum* or *obiter dictum* contained in *Williams* v. *Tilt,* is repeated in *Froude* v. *Bishop,* 25 App. Div. 514, citing 36 N.Y. 325, and italicizing the words "void" and "voidable," but without reasoning or the citation of any other authorities.

In *Chapuis* v. *Mathot,* 91 Hun. 565, the court said at page 568:

"The right to set up usury is altogether personal to the borrower and those in privity with or claiming under him, and the usurious contract is voidable at the election of the borrower or those in privity with him. The state of the law on the subject is summed up in *Williams* v. *Tilt,* (36 N.Y. 319, 325). After referring to *Dix* v. *Van Wyck* (2 Hill. 522) and *Post* v. *Dart* (8 Paige, 639), in which it was held that a mere stranger can not attack the validity of a usurious security, but that the defense of usury may be availed of by any one who claims under the security and who is in privity with the person who gave it, the court proceeds to say: 'This is the extent to which the cases have carried the right, *and even the right of privies may be cut off by the waiver of the original party.* (*Sands* v. *Church,* 2 Seld. 347). The contract is *not absolutely void,* but *only voidable,* at the election of the borrower or those who are privies in interest or in contract with him. Hence no other party can make the objection.' This statement is fortified by a long list of authorities cited in the opinion."

For the reasons already indicated, we can not concur either in this reaffirmance of the *dictum* in *Williams* v. *Tilt,* so far as the question as to the void or voidable character of an usurious contract is concerned, nor in the view that

the *dictum* is fortified as to this aspect thereof by the "long list of authorities cited in the opinion."

Various portions of the Corpus Juris article on usury seem to have been prepared by different authors. The writer of section 316 does not cite all of the authorities which might have been included among those referred to in his admission that: "There is apparently some authority to the contrary." As a starting point for further investigation, we may refer in passing to section 180 of the same article at page 237, as a more comprehensive statement with citation of additional authorities, including *Horton* v. *Robert,* 11 P.R.R. 168. In that case this court, as constituted at the time, was in the main, unanimous. The divergence of opinion arose on certain questions of evidence. The concurrent opinion points out that *Lloyd* v. *Scott,* 20 U.S. 226, cited in the opinion of the court, has never been reversed and concedes the binding force of the opinion in that case upon this court. The writer then says at page 192:

"Furthermore, the construction put upon similar interest statutes in the States which prevents the aliencee of property from setting up usury is dependent upon certain principles of equity which have never been applied in Porto Rico, and the application of which, in the face of the special statute, has not been confided to the courts of Porto Rico. The policy of the law having been determined by the legislature, the interpretation of the statute is as contended for in the opinion of the court, and in accordance with the principles laid down in the first chapter of the Civil Code."

From the opinion of the court in *Horton et al.* v. *Robert,* at pages 176 and 177, we take the following extract:

"The statute of Porto Rico on the subject of usury, quoted at length herein, is more strict and forcible than many statutes of the kind. It provides that usurious contracts are utterly void for all purposes, and a court of competent jurisdiction in a proper action is given authority to enjoin either the collection thereof or any proceeding which may be brought to enforce such a contract, and the court may direct the original of such a contract to be made void; and it is provided in the statute itself that the payment of the principal

sum or the interest, or any part thereof, shall not be required as a condition to granting the remedies last mentioned, as is done in some of the States where the law is less rigorous.

"Usury statutes in many of the States forfeit only the interest or the excess of interest over the legal rate, making this forfeiture in the nature of a penalty, so that such contracts are not held by the courts to be utterly void, but only voidable, when proper action is taken to make them so on the part of the borrower, or the person who has agreed to pay the usurious interest. This has caused a variety of decisions on the question involved in the different States, varying with the terms of their several statutes, and in reference to such laws the Supreme Court of the United States in the case of *Fleckner* v. *United States Bank*, 21 U. S. 355, says:

" 'The statutes of usury of the States, as well as of England, contain an express provision, that usurious contracts shall be utterly void; and without such an enactment, the contract would be valid, at least in respect to persons who were strangers to the usury.'

"This proposition contains a negative pregnant meaning that where such enactments exist, making such contracts void, as in Porto Rico, the contract is utterly void, as to all persons. The Supreme Court of the United States seventy-five years later announced the propositions that:

" 'When a State thinks that the evils of usury are best prevented by making usurious contracts void, and by giving a right to the borrowers to have such contracts unconditionally nullified and canceled by the courts, as in this case, such a view of public policy, in respect to contracts made within the State and sought to be enforced therein, is obligatory on the Federal Courts, whether acting in equity, or at law; and the local law, consisting of the applicable statutes, as construed by the Supreme Court of the State, furnishes the rule of decision.' (*Missouri, Kansas & Texas Trust Co.* v. *Krunseig,* 172 U. S. 351).

"There can be no doubt whatever that Porto Rico is one of those Governments which take the view suggested by the Supreme Court in the Paragraph last cited, and that the legislature of this Island intended that usurious contracts, when they were found to be so, should be considered in our courts as utterly void as to all persons and for all purposes; and so being this fact can be taken advantage of, and set up in any sort of proper pleading, by any person who has any interest in the subject matter, whether he may have been a party to the original contract or not."

For the purposes of this opinion, it may be conceded, without holding, that in *Horton et al.* v. *Robert,* this court, but for the case of *Lloyd* v. *Scott,* might have construed the statute as it then stood to mean that an usurious contract was utterly void for all purposes as between the parties and their privies, but not utterly void for all purposes as to strangers. It is one thing to construe such a statute in this way. It is quite another thing to construe it as meaning that the usurious contract is voidable but not void as between the parties themselves. Such a construction would have amounted to the repeal *pro tanto* of a perfectly plain and emphatic legislative enactment by judicial legislation in the guise of statutory construction.

We find no satisfactory basis in the counter memorandum nor in sections 315 and 316 of the article on usury in Corpus Juris for a modification or abandonment at this time of the conclusion reached in *Horton et al.* v. *Robert* as to the absolute nullity of an usurious contract as between the parties thereto and their privies under the statute as it stood from 1903 to 1907. Whether or not the same conclusion should be reached under our usury law as subsequently amended is a question which has not been discussed in the counter memorandum and which need be but briefly noted, now.

Sections 1, 4, and 5 of the law as originally enacted (Revised Statutes and Codes 1902, secs. 359, 362, and 363) were as follows:

"Section 1.—That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of twelve ($12) dollars annually, on each one hundred ($100) dollars or upon its equivalent in value and at the same rate for a greater or less sum or for a longer or shorter period. *Provided, however,* that no rate of interest shall be fixed by special agreement in excess of twelve ($12) dollars a year on each one hundred ($100) dollars or upon its equivalent of value.

"Section 4.—No persons shall, except as authorized by section 3 of this Act, demand or receive, directly or indirectly, any money or goods, or by way of commission or discount, or in any other way, any greater rate of interest for the loan or forbearance of any money, than the rate provided herein.

"Any contract whereon or whereby directly or indirectly there is reserved, or accepted, or secured or agreed to be reserved, accepted or secured any greater rate of interest than is allowed by this Act, is utterly void for all purposes; and a court of competent jurisdiction in a proper action may enjoin either the collection thereof, or any proceeding to enforce such contract, and may direct the original of such contract to be made void and the payment of the principal sum, or interest, or any part thereof shall not be required as a condition to granting the remedies last mentioned."

"Section 5.—Any person who for any loan or forbearance pays or delivers any greater sum or value than is fixed by law as interest at the legal rate, or his representatives, may within one year after such payment or delivery, recover by action the excess of the money or value so paid over the amount of interest at legal rate from the person or his representative who accepted or received the same."

The first two sections were amended in 1903 and 1907, respectively (Comp. Stat. 1911, secs. 4172 and 4175), to read as follows:

"Section 1.—That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of six ($6) dollars annually, on each one hundred ($100) dollars or upon its equivalent in value and at the same rate for a greater or less sum or for a longer or shorter period. *Provided, however,* That no rate of interest shall be fixed by special agreement in excess of twelve ($12) dollars a year on each one hundred ($100) dollars or upon its equivalent of value. Within the limit here defined it shall be lawful to discount bills and notes and other similar obligations.

"Section 4.—No person except as authorized by section 3 of this act, shall demand or receive, directly or indirectly, any money or goods, at any greater rate of interest for the loan or extension of time of said loan, than the rate provided for herein.

"Any contract wherein or whereby there is reserved, accepted or secured, or agreed to be reserved accepted or secured, any greater

rate of interest than is allowed by this act, is utterly void for all purposes, in so far as the interest is concerned; and a court of competent jurisdiction in a proper action may enjoin the collection of said interest, and any proceeding to enforce such contract, or upon shall be void, in so far as it refers to (of) the interest.''

Section 4 was further amended in 1916 (Session Laws, p. 100) to read:

''Section 4.—No person except as authorized by section 3 of this Act, shall demand or receive, directly or indirectly any money or goods, at any greater rate of interest for the loan or extension of time of said loan, than the rate provided for herein. Nothing in this Act shall be taken to prohibit the sale of goods for cash at a less price than for credit.

''No contract wherein or whereby there is reserved, accepted or secured, or agreed to be accepted or secured any greater rate of interest than is allowed by this act, may be made effective in any court in Porto Rico, except for the amount of the principal due; and the court must provide, furthermore, in the judgment directing the debtor to pay the principal, that the creditor shall recover only seventy-five per cent of said principal and that the remaining twenty-five per cent shall be awarded to and recovered by The People of Porto Rico, who may obtain a writ of execution, in the same manner as the plaintiff, but without precedence over the amount awarded to the latter, to make effective the twenty-five per cent in that manner awarded.''

Section 4 of the Law of 1916 provides that the rights therein defined ''shall not be waived.''

Section 1 of the Law of 1902, now reads:

''Section 1.—That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of six (6) dollars annually, on each one hundred (100) dollars or upon its equivalent in value, and at the same rate for a greater or less sum or for a longer or shorter period; *Provided, however,* That no rate of interest shall be fixed by special agreement in excess of nine (9) dollars a year on each one hundred (100) dollars or upon its equivalent in value, when the capital the object of the loan or of the agreement does not exceed three thousand (3,000) dollars, and

eight (8) dollars a year on each one hundred (100) dollars when the capital passes said sum. Within the limits here defined, it shall be lawful to discount bills and notes and other similar obligations."

In at least one case, *McArthur* v. *Shenck*, 11 Am. Rep. 643, it has been said that:

"In theory, the borrower has been put, by such laws in the same category with persons under legal disability to contract, such as infants, *femes covert*, and persons *non compos montis*. He has been declared legally incompetent to make a bargain about money where more than the lawful rate of interest was demanded."

If the Wisconsin court was right, it follows by the express provision of section 1213 of the Civil Code (1930 ed.) that "There is no contract. . ."

According to section 1206 "a contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." A contract which is expressly forbidden by section one of the Usury Law, as amended in 1933, and which, by the terms of section 4 of the law as amended in 1916, can not be made effective in any court in Puerto Rico, does not bind the debtor. As to him it is void because it creates no obligation and so does not meet the requirement of the statutory definition of a contract.

The views expressed in the preceding paragraph are tentative. We have not overlooked the seeming conflict of authority, but we shall not stop at this time to conduct of our own initiative and without the aid of counsel an investigation of this interesting question. See, however, 13 C.J. 410, section 339; 27 R.C.L. 242, 244, 245, sections 45, 47, 48 and note to *Eskridge* v. *Thomas*, L.R.A., 1918 C., 769, 773, 775.

Article 110 of the Regulations for the Execution of the Mortgage Law reads in part as follows:

"In order to distinguish curable defects from those which are not, . . . the registrar shall consider the validity of the obligation

the subject of the instrument. If such obligation should be void on account of its nature, conditions, the capacity of the parties thereto or a similar cause independent of its extrinsic form, the defect shall be considered incurable. If the obligation should be valid,. in view of the said circumstances, and the defect should be merely in the external form of the document containing it, which can be amended or rewritten at the will of the persons interested in the record, the defect shall be considered curable.''

Whatever else may be said of the defect now under consideration, it is not a mere defect in the form of the instrument presented for record. That instrument .cannot be ''amended or rewritten at the will of the persons interested in the record'' in such a manner as to remove the objectionable feature. By the terms of section 4 of the law of 1916, the borrower is as powerless to bind himself by a waiver of his statutory right as he was to bind himself by the original obligation. In no other way, unless it be a new and radically different agreement for the payment of interest at or below the maximum rate permitted by law, could the original contract be purged of its usury.

If, as contended in the counter memorandum, the registrar is without jurisdiction to question the validity of an usurious contract but must record the same, notwithstanding its usurious character, then by the same token he must refrain from any reference to the fact that the contract is tainted with usury. In other words, as far as the question of usury is concerned, he must record the instrument without mention of any curable defect. An unscrupulous mortgagee would then need only to obtain a certificate from the registrar of property and to institute a summary foreclosure proceeding in order to cut off the defense of usury, unless this court is prepared to hold that the mortgagor may set up usury as a defense in such a proceeding. As to this see *Cueto* v. *District Court et al.*, 37 P.R.R. 227.

Again, an assignee of the mortgagee might invoke the protection of article 34 of the Mortgage Law on the ground that the usurious character of the contract did not clearly appear

in the registry. As we have seen, the portion of the contract excluded from the record as made, did not specify the rate of interest. It merely continued in force in general terms the provisions of a pre-existing contract. We need not discuss the merits of the question here suggested. One of two results would follow. If this court should hold that the assignee is entitled to the protection of article 34, then the borrower's statutory right would be cut off and the statute would become, to that extent, a dead letter. If, on the other hand, this court should hold that the assignee stands in the shoes of his assignor, notwithstanding the provisions of article 34, then the innocent purchaser of a recorded mortgage would lose not only his interest but one-fourth of the principal secured by said mortgage. We mention this aspect of the case only to emphasize the fact that the registrar is not an officious intermeddler attempting to curb the greed of an avaricious money lender nor a sentimentalist rushing to the rescue of a borrower who is not in need of assistance and desires none.

Without closing the door to further discussion, the ruling appealed from must be affirmed.

Mr. Justice Córdova Dávila concurs in the result.

MR. JUSTICE WOLF, dissenting.

Section 18 of the Mortgage Law provides:

"Registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, upon the facts that appear from said instruments themselves.

"They shall likewise, under their responsibility pass on all documents issued by judicial authorities for the sole purpose of admitting, suspending or refusing their admission to record or entry.

"The only remedies against a decision suspending or refusing to admit to record or to enter a cautionary notice shall be such as are provided for in this law, and judges and courts can not otherwise compel registrars to make records or entries by virtue of judicial documents."

The question is whether a deed which calls for the payment of interest denominated usurious by the law is necessarily illegal. I maintain that there are various possibilities wherein the contract for interest exhibited in this case may be perfectly valid and enforceable in a court of law.

This, while important, is not the principal point of my dissent, but I may say in passing that if in fact the parties to the contract, before the 16th of August 1933, the date on which section 1 of the interest law was amended, fixed the rate of interest to be paid on the renewal of a loan at 12 per cent, a mortgage to cover the loan at that rate would be perfectly valid between the parties, even though on the face of the deed an apparently illegal rate of interest was sought to be recovered. Likewise, if the loan were originally made at 12 per cent and the understanding of the parties was that the loan was to run at 12 per cent until paid, an extension of a mortgage or even a new mortgage would be entirely valid to secure the original obligation.

Among the rebuttable presumptions to be found in our Law of Evidence we have the following (Rev. Stat., sec. 1470):

"Sec. 102.　　＊　　＊　　＊　　＊　　＊　　＊　　＊
"19. That private transactions have been fair and regular.
"＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊
"32. That the law has been obeyed."

Without resort to any particular presumption the possibility should be excluded that there was not a legal and valid obligation. I maintain that there is no presumption to the contrary.

A mortgage is always a subsidiary contract. My contention is that when either of the two possibilities exists the parties are entitled to a record with an opportunity, if necessary, to show that the original contract was valid. And if under either of the above suppositions a valid obligation exists the subsidiary contract, namely, the mortgage, would also be valid. Thus, in analogy to *Compañia Azucarera de*

*la Carolina* v. *Registrar,* 19 P.R.R. 143, that would really be a question of fact to be decided.

Section 1228 of the Civil Code (1930 ed.) presents some analogy. It is as follows:

"Sec. 1228. The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one."

Likewise, in passing, not to lay too much stress on the *Carolina* case, *supra,* if a contract usurious on its face is capable of being enforced by the waiver or consent of the debtor or anyone of his privies, this possibility, if not an actuality, would be a matter of fact. It would be a question *in pais* whether the debtor chose to raise the question of usury.

The registrar of property in Puerto Rico is a quasi judicial officer and not in any sense either a stranger or not a stranger to a contract made between the parties. He is thoroughly bound to declare a contract illegal if in fact it is so and he could be called a stranger only in the same way that a court would be. When in an opinion one uses the phrase that a person is a stranger to a contract necessarily one refers to somebody, not the registrar, who is seeking to obtain some advantage or benefit for himself by declaring a supposed usurious contract illegal.

The principal point that I make is that, with possible exceptions that do not apply here, the borrower and certain well-recognized privies are the only persons who may obtain relief from or insist upon the usurious character of a contract. *Berk* v. *Isquith Productions,* 131 Atl. 526; *Hodges* v. *Westmoreland,* 8 Div. (Ala.) 551, 96 So. 573; *Dix* v. *Van Wyck,* 15 N.Y. Com. Law. Rep. 522; *Pritchett* v. *Mitchell,* 17 Kan. 355, 22 Am. Rep. 287; *Billington* v. *Wagoner,* 33 N.Y.C.A. Rep. 33; *Williams* v. *Tilt,* 36 N.Y.C.A. Rep. 319 and cases cited therein at page 326; 66 C.J. 314, 315; 27 R.C.L. 83.

I do not concede that *Williams* v. *Tilt* is *obiter dictum* but even if it were it correctly expounds the state of the law

in New York. This and the other cases justify the reference to Corpus Juris and Ruling Case Law, *supra,* which latter are also agreeable to my own ideas of the state of the law. As to the objection of *obiter dictum* with regard to the case of *Williams* v. *Tilt, supra,* I may say that inasmuch as the person who has absolutely no connection or interest in the contract will not ordinarily file a gratuitous suit, to set it aside, few cases will be found where the courts will say that the plaintiff can not be heard because he is a stranger to the contract. On the other hand, a great many cases will be found where if a person has some interest or color of interest in declaring a contract void, or even in cases where he has the absolute right to void a contract, the courts, *qua supra,* have often laid down the principle that a mere stranger to the contract could not raise the question.

While some courts without a plea to that effect will raise the question of usury in favor of a debtor or a privy, I think no case can be found where a court will raise it for the benefit of a stranger to the contract.

While there may be cases that decide the contrary, in my opinion the general rule is that the courts will not permit a purchaser of an equity of redemption who has expressly assumed to pay the mortgage and interest as part of the consideration, to insist that the contract was illegal by reason of its usurious nature. *Mathews* v. *Ormerd,* 140 Cal. 578; *Ferris* v. *Crawford,* 2 Den. 595; *Caldwell* v. *Commercial Bank,* 194 P. 899, 900. See 27 Third Dec. Digest 523; 19 R.C.L. 300, sec. 74; 27 R.C.L. 288, sec. 89, *et seq;* see note Vol. 2 Am. & Eng. Ann. Cases 46.

The equity courts go even further, and in cases where the debtor is seeking relief therein, generally require him to pay the principal loan. *De Wolf* v. *Johnson,* 10 Wheaton, 23 U.S. 367, 392; *Phila & Sunbury R.R. Co.* v. *Lewis,* 75 Am. Dec. (Pa.) 574; 29 R.C.L. 265, sec. 67.

In certain jurisdictions there may be some doubt whether the courts will not protect the debtor, as I have suggested,

even against his will, but in the states where such a practice is followed the statute, I am inclined to think, would declare a usurious contract totally void and inexistent. Such was the state of the law in Puerto Rico, to judge from the decision of this court in *Horton et al.* v. *Robert,* 11 P.R.R. 168.

In 1916 the Legislature of Puerto Rico changed the policy of the usury statute and used the following language:

"Sec. 4.—*  *  *  *  *  *  *

" 'No contract wherein or whereby there is reserved, accepted or secured, or agreed to be accepted or secured any greater rate or interest than is allowed by this Act, may be made effective in any court in Porto Rico, except for the amount of the principal due; and the court must provide, furthermore, in the judgment directing the debtor to pay the principal, that the creditor shall recover only seventy-five per cent of said principal and that the remaining twenty-five per cent shall be awarded to and recovered by The People of Porto Rico, who may obtain a writ of execution, in the same manner as the plaintiff, but without precedence over the amount awarded to the latter, to make effective the twenty-five per cent in that manner awarded." (Act No. 47 of 1916.)

There is ample authority in the United States to the effect that usury has lost its immoral taint and usurious contracts are seldom considered to be against public policy but merely against positive law. *Lloyd* v. *Scott,* 29 U.S. (4 Peters) 205, 223; 21 A.L.R. 495; 27 R.C.L. 281.

Where the statute, as in Puerto Rico today, declares a contract of this sort invalid or unenforceable, or uses similar phrases, not totally voiding the contract, the courts as it seems to me have generally said that the contract is only voidable at the instance of the debtor and his privies.

The Statute of Frauds, although in a different field, uses similar strong language and forbids verbal contracts of a certain nature, but the courts have practically always held that the privilege of the Statute of Frauds may be waived and we have indicated the same thing in *De la Torre & Ramírez* v. *Bengoechea,* 48 P.R.R. 358.

I maintain that where, as here, the legality of a contract depends upon the will of the debtor, the registrar has no right to refuse the record.

A minor point is that, as I understand it, the contract with its interest is an entirety and the interest clause should not be segregated from the body of the deed, but the parties left to challenge the validity of the contract when its enforcement is sought. The registrar may not make a new contract for the parties. There could be no harm done by recording, inasmuch as the debtor and his privies could always raise the defense of usury and no third person could be injured. The Mortgage Law is primarily for the protection of third persons and not for the parties to the contract, who as between themselves are subject to the same rules of interpretation whether their contract is recorded or not. Section 33 of the Mortgage Law provides:

"Instruments or contracts which are null under the law are not validated by their admission to record."

The note should have been reversed and the whole contract recorded.